# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

DELTA AIR LINES, INC. AND AEROVIAS DE
MEXICO S.A. DE C.V.,

            Petitioners,

     v.

DEPARTMENT OF TRANSPORTATION,

            Respondent.

No. 25-_____

## PETITION FOR REVIEW

Pursuant to 5 U.S.C. §§ 702-704, 5 U.S.C. § 706, 49 U.S.C. § 46110, and Federal Rule of Appellate Procedure 15(a), Delta Air Lines, Inc. and Aerovías de México S.A. de C.V. petition this Court for review of Final Order 2025-9-8 issued by the Department of Transportation on September 15, 2025, in Docket DOT-OST-2015-0070.  A copy of the Department's Final Order is attached as Exhibit A.  Venue is proper in this Circuit because Delta Air Lines, Inc. is headquartered in Atlanta, Georgia.  *See* 49 U.S.C. § 46610(a).

The Certificate of Interested Persons and Corporate Disclosure Statement required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1 are attached as Exhibit B.

Dated:  October 9, 2025

Respectfully submitted,

 __/s/ Matthew J. MacLean_____
Matthew J. MacLean
Charles F. Donley II
Edward W. Sauer
Nicole Steinberg
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C.  20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*

 __/s/ Eugene Scalia_____
Eugene Scalia
Amir C. Tayrani
Christine M. Buzzard
Michael P. Corcoran
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
escalia@gibsondunn.com

Peter Carter
Marguerite H. Taylor
DELTA AIR LINES, INC.
1030 Delta Boulevard
Atlanta, GA  30320

Steven J. Seiden
Christopher Walker
DELTA AIR LINES, INC.
601 Pennsylvania Avenue, N.W.
Suite 700
Washington, D.C.  20005

*Counsel for Delta Air Lines, Inc.*

## CERTIFICATE OF ELECTRONIC SUBMISSION

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.


Dated: October 9, 2025                    Respectfully submitted,

                                            ___/s/ Eugene Scalia_____
                                            Eugene Scalia

                                            *Counsel of Record for Petitioner*
                                            *Delta Air Lines, Inc.*

Certificate 1

## CERTIFICATE OF SERVICE

I certify that on October 9, 2025, the foregoing Petition for Review was electronically filed with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system and one copy was sent to the Clerk of Court by overnight United Parcel Service.

I further certify that, on October 9, 2025, a true and correct copy of the foregoing was served on the following by overnight United Parcel Service:

Sean P. Duffy, Secretary
Gregory D. Cote, Acting General Counsel
U.S. Department of Transportation
1200 New Jersey Ave, S.E.
Washington, D.C. 20590

I further certify that there are no parties "admitted to participate in the agency proceedings" for purposes of Federal Rule of Appellate Procedure 15(c)(1) other than Respondent.

Dated: October 9, 2025                    Respectfully submitted,

                                          */s/ Eugene Scalia*
                                          Eugene Scalia

                                          *Counsel of Record for Petitioner*
                                          *Delta Air Lines, Inc.*

# EXHIBIT A

Order 2025-9-8
Issued: September 15, 2025



**UNITED STATES OF AMERICA**
**DEPARTMENT OF TRANSPORTATION**
**OFFICE OF THE SECRETARY**
**WASHINGTON, D.C.**

Issued by the Department of Transportation
on the 15th day of September 2025

| | |
|---|---|
| Joint Application of<br><br>**DELTA AIR LINES, INC.**<br>**AEROVIAS DE MEXICO, S.A. DE C.V.**<br><br>Under 49 U.S.C. §§ 41308 and 41309 for<br>Approval of and Antitrust Immunity for<br>Alliance Agreements | **Docket DOT-OST-2015-0070** |

## FINAL ORDER

By this Order, the U.S. Department of Transportation (the Department) makes final the proposed decision in Order 2025-7-12 to end the price- and capacity-setting joint venture operated by Delta Air Lines, Inc. (Delta) and Aerovias de Mexico, S.A. DE C.V. (Aeromexico). Specifically, the Department terminates approval of the Delta/Aeromexico joint venture agreements under 49 U.S.C. § 41309 and associated grant of antitrust immunity (ATI) under 49 U.S.C. § 41308. This termination is effective as of January 1, 2026.

This action is necessary because of ongoing anticompetitive effects in U.S.-Mexico City markets that provide an unfair advantage to Delta and Aeromexico as two predominant competitors and create unacceptable actual and potential harm for stakeholders, including consumers. These anticompetitive effects have broader implications beyond Mexico City, affecting competition for passengers and cargo operations in additional markets between the United States and Mexico.

The Government of Mexico (GoM) continues along a path of market intervention and distortion that adversely affects competition in the U.S.-Mexico air services market and is contrary to the U.S.-Mexico Air Transport Agreement in which the GoM made a "commitment to promote and facilitate an international aviation system based on competition among airlines in the marketplace."[1] As documented in this proceeding, the GoM confiscated slots, prohibited all-cargo operations at Mexico City's primary airport, Benito Juarez International Airport (MEX),

---

[1] Air Transport Agreement Between the Government of the United States of America and the Government of the United Mexican States (Dec. 18, 2015) at 1, *available at* https://20092017.state.gov/e/eb/rls/othr/ata/m/mx/250782.htm.

perpetuated a slot allocation regime that does not meet international standards and advantages Aeromexico, and generally demonstrated that, at any time, the GoM may upset aviation operations and long-term commercial planning by airlines through arbitrary action.[2]

In such an environment, it is inappropriate for the Department to continue a grant of ATI because there is inadequate competition in the market. Significant problems become not just possible, but likely: higher fares in some markets, stifled innovation, reduced capacity (including frequencies and new routes), "doing business" challenges for U.S. carriers due to government intervention, and other impediments for incumbent competitors and new entrants. The Department is observing some of these impacts in the U.S.-Mexico market already and the anticompetitive impacts are exacerbated by the joint venture. An open international regulatory framework consistent with Open Skies principles, in law and practice, remains essential, pursuant to 49 U.S.C. §§ 41309 and 41308, for obtaining approvals of, and maintaining grants of antitrust immunity for, price- and capacity-setting joint ventures.

This action is the culmination of an objective factual assessment based upon nearly a decade of persistent competition issues, effectuated through a transparent process of reviewing joint venture alliances under Sections 41309 and 41308, applying rigorous standards that the joint venture partners must continually meet. The Department is authorized by Congress to review developments in the marketplace periodically and act as warranted to safeguard competition in domestic and international markets.[3]

The Department is not foreclosing the possibility of an improved competitive environment in the future. The GoM has begun engaging with the Department to discuss U.S. concerns stemming from Mexico's noncompliance with the U.S.-Mexico Air Transport Agreement. However, it will take time before the Department is able to assess the GoM's willingness and ability to come back into and remain in full compliance with the U.S.-Mexico Air Transport Agreement, and for competitive market conditions to improve in the U.S.-Mexico market.

Even without a grant of ATI, Delta and Aeromexico have considerable flexibility to compete in the market and to work together to maintain and enhance their joint offerings. Delta's 20 percent equity stake in Aeromexico will be a powerful economic incentive to continue cooperation subject to the antitrust laws. If conditions improve, the Department will take those improved conditions into account at that time.

I.      BACKGROUND

In 2015, the United States and the GoM agreed to a liberalized air services regulatory framework, with the resulting U.S.-Mexico Air Transport Agreement containing all elements of

---

[2] *See* Order to File Schedules, Order 2025-7-11 (July 19, 2025), DOT-OST-2025-0436-0001 (hereinafter referred to as "Order 2025-7-11").
[3] *See e.g.,* 49 U.S.C. § 41309 (b)(1) (the Secretary shall "after periodic review, end approval of, an agreement … that substantially reduces or eliminates competition…").

an Open Skies agreement as defined by the Department.[4]  Even before the agreement became effective, the United States indicated to the GoM and interested parties that each application for ATI is considered on its merits: "[b]ecause the DOT must, by statute, take into account the competitive market conditions contemporaneous with the filing of an ATI application, carriers should be aware of the need to take into account the availability of all essential commercial rights … in the framework of a modernized agreement."[5]

In 2016, the Department completed a lengthy review and granted a request by Delta and Aeromexico to launch a joint venture in the U.S.-Mexico market with a grant of ATI.  The joint venture is an integrated commercial arrangement enabling the joint venture partners to coordinate prices, capacity, and operations.  The full history of this matter, captured in nearly a decade of filings in this docket, is recited in Order 2025-7-12 and summarized as follows:

- ***First Application***: On March 31, 2015, Delta and Aeromexico applied for approval of, and a grant of ATI for, a joint venture providing integrated services between the U.S. and Mexico.  The Department paused the proceeding pending the implementation of an Open Skies agreement between the U.S. and the GoM.  During consideration of the application, the Department identified and committed to the record several significant competitive concerns regarding concentration at MEX, problematic competitive behaviors by incumbents at MEX, and anticompetitive slot administration practices by Mexican authorities.

- ***Approval with Conditions***: Based on concerns in the record, the Department identified a narrow pathway by which Delta and Aeromexico could obtain a grant of ATI, subject to strict conditions.  Among other factors, the Department was concerned about the slot allocation mechanism at MEX and its impact on competition and the realization of public benefits otherwise unattainable.  The conditions included a slot divestiture, limiting the duration of the approvals to five years, and language clarifying that the Department could review and terminate the ATI at any time.  Delta and Aeromexico were required to submit and obtain approval of a *de novo* application as a requirement to maintain ATI going forward.  The Department memorialized these conditions in a show cause order, with notice and an opportunity for comment, and a final order.  Delta and Aeromexico accepted the conditions on November 30, 2016[6] and were given approval of, and a grant of ATI for, their joint venture on December 14, 2016, for a limited time with an expiration date.[7]

---

[4] *See* Supplemental Order to Show Cause, Order 2025-7-12 (July 19, 2025)  at 15 and footnote 64 (hereinafter referred to as "Order 2025-7-12").
[5] Order 2025-7-12 at 4, citing U.S.-Mexico Memorandum of Consultations (Nov. 7, 2014), U.S. Department of State, *available at* https://2009-2017.state.gov/e/eb/rls/othr/ata/m/mx/250782.htm.
[6] Reply of the Joint Applicants (Nov. 30, 2016), DOT-OST-2015-0070-0091.
[7] Final Order, Order 2016-12-13 (Dec. 14, 2016), DOT-OST-2015-0070-0096.

- ***Extension of the Expiration Date***: In December 2020, by Order 2020-12-18, due to the COVID-19 pandemic and other reasons, the Department agreed to postpone the expiration of the ATI.  The Department stated that the "grant of antitrust immunity will continue in effect through the Department's review of the Joint Applicants' *de novo* application."[8]

- ***Second Application***: On March 29, 2022, Delta and Aeromexico filed a *de novo* application.  The Department reviewed the application and determined to suspend the procedural schedule.[9]  The suspension did not terminate the existing ATI, which continued in effect pending further consideration of the issues.  The *de novo* application was filed at a time when competitive concerns in the market were increasing significantly.  Order 2025-7-12 explains that, among other things, the Federal Aviation Administration had determined that the GoM was not providing aviation safety oversight in accordance with international standards and had frozen the service offered by Mexican carriers to existing levels, lessening competition.[10]

- ***The GoM's Non-Compliance with the U.S.-Mexico Air Transport Agreement and Unilateral Changes to the Regulatory Framework***: Beginning in 2022, the GoM took a series of measures that restricted the U.S.-Mexico air services market, calling into question the propriety of the continued approval of the joint venture and undermining the Department's findings in its ATI orders.  These actions were documented by Notice in Docket DOT-OST-2021-0152, Order 2024-01-17 in this docket and again in Order 2025-7-11 in Docket DOT-OST-2025-0436 and Order 2025-7-10 in Docket DOT-OST-2025-0435, the former having been expressly cited and relied upon in Order 2025-7-12 in this docket.

- ***Early Proposal to Withdraw the Grant of ATI***: In January 2024, after reviewing the *de novo* application and considering the issues then affecting the market, the Department proposed to withdraw its grant of ATI from Delta and Aeromexico by dismissing their pending application.  Order 2024-01-17 identified the Department's concerns, noting the decree by the GoM prohibiting all-cargo operations at MEX, the confiscation of U.S. carrier slots, and the unreliable and nontransparent slot administration practices that reduced capacity and restricted new entry at MEX.

Over the subsequent 18 months, the Department continued engagement with the GoM concerning its violations of the bilateral agreement, but to no avail.  The adverse conditions not only continued but worsened.[11]

---

[8] Order 2020-12-18 (Dec. 17, 2020) at 5, DOT-OST-2015-0070-0235.

[9] *See* Notice (April 11, 2022), DOT-OST-2015-0070-0239; *see also* Order 2025-7-12 at 9-10.

[10] *See* Order 2025-7-12 at 9-10.

[11] *See, e.g.*, Order 2025-7-10 (July 19, 2025) (documenting that the GoM began impairing operating rights of charter and cargo carriers), DOT-OST-2025-0435-0001.

**A. Supplemental Show Cause Order 2025-7-12**

On July 19, 2025, the Department issued a detailed Supplemental Show Cause Order proposing to end the Delta/Aeromexico joint venture previously approved in 2016. In Order 2025-7-12, the Department cited a comprehensive list of authorities authorizing the Department to review regulatory conditions on an ongoing basis.[12] The Department explained that the applicable statutes for reviewing international joint ventures are 49 U.S.C. §§ 41309 and 41308 and that the Department's critical assessment of the international regulatory framework in relevant markets is firmly grounded in the statutory standards.

The Department established that circumstances have changed in the U.S.-Mexico City and broader U.S.-Mexico markets since the initial approval of the Delta/Aeromexico joint venture, and that significant competition concerns exist that create actual and potential harm for U.S. stakeholders, including consumers.[13] The Department outlined the competition-limiting measures taken by the GoM, including by reference to Order 2025-7-11, which required Mexican carriers to begin filing schedules. The Department explained the distortions in competition that are occurring and are likely to continue occurring due to inadequate competition in the market. Order 2025-7-12 described how these distortions have reduced the economic incentive for the Delta/Aeromexico joint venture to pass along to consumers economic benefits in the form of better services, lower prices, and increased capacity on hub-to-hub routes providing additional seats for connecting markets.

The Department conducted two analyses using publicly available information and market data widely available to interested parties: the Analysis of Changed Circumstances, which included a review of detrimental competitive effects and loss of public benefits, and the Additional Factual Assessment of Competitive Conditions. Relying upon the Analysis of Changed Circumstances, the Department applied the statutory standards in 49 U.S.C. §§ 41309 and 41308 to the facts and circumstances in the record:

> Based on these facts and circumstances, the Department cannot clear the statutory hurdles in section 41309 to approve, or maintain approval of, a significant [joint venture] agreement; rather, the statute guides us to 'after periodic review, end approval of … an agreement…that substantially reduces or eliminates competition.'

> [T]he Department concludes tentatively that its 2016 findings and conclusions supporting approval of the joint venture under 49 U.S.C. § 41309 and a grant of antitrust immunity for Delta and Aeromexico under 49 U.S.C. § 41308 are no longer valid. Consistent with this conclusion, under section 41309, the Department disapproves tentatively the [joint venture] agreement because continuation would be adverse to the public interest. Under section 41308, the

---

[12] *See* Order 2025-7-12 at 12-14 ("All of the statutes of general applicability strongly counsel the Department to remain vigilant and dynamic in its assessment and view of the public interest.").
[13] Order 2025-7-12 at 2-3, 10, 18-28.

Department determines tentatively that a grant of ATI is not required by the public interest.[14]

Before drawing tentative conclusions, the Department considered alternative approaches. Order 2025-7-12 documented the Department's consideration of (1) maintaining the ATI while waiting for events to change, (2) abandoning the earlier proposal to withdraw the grant of ATI and letting international negotiations play out, (3) carving out Mexico City and/or cargo from the scope of the ATI grant, and (4) using other means, such as 49 U.S.C. § 41310, to address competitive concerns. The Department weighed these alternatives in two pages of discussion and highlighted language in the ATI statutes providing that the Secretary shall disapprove a joint venture that substantially reduces competition unless he finds that (1) the agreement is necessary to meet a serious transportation need or to achieve important public benefits, and (2) the transportation need cannot be met or those benefits cannot be achieved by reasonably available alternatives that are materially less anticompetitive. In the context of this case, those reasonably available alternatives may include non-immunized forms of cooperation between Delta and Aeromexico, such as loyalty program coordination and code sharing.

The Department explained that there were two proceedings involving Delta and Aeromexico. The first proceeding was the review of the existing approval and grant of ATI as extended through the pendency of the Department's review, which may result in modification or termination of the ATI as warranted.

The second proceeding was initiated with the *de novo* application that the Department directed Delta and Aeromexico to file if they wished to obtain renewed approval of, and a grant of ATI for, the joint venture agreements to extend beyond the initial limited term. When the new application was filed in 2022, the Department suspended the procedural schedule via a Notice issued April 11, 2022, until the record was substantially complete. Order 2025-7-12 did not change this procedural posture. Thus, the *de novo* application remains suspended under the Department's previously issued Notice.[15]

After the Department issued Order 2025-7-12, Delta and Aeromexico, supported by several interested parties, moved for additional time to respond. Delta and Aeromexico asked for four additional weeks. The Department granted them one additional week over and above the normal 14-day comment period, stating that a longer extension risks the possibility of unnecessarily prejudicing parties affected by the competitive issues in the U.S.-Mexico market.

---

[14] Order 2025-7-12 at 25, 38.
[15] Notice (April 11, 2022), DOT-OST-2015-0070-0239.

### B.  Comments on the Supplemental Show Cause Order 2025-7-12

The Department invited public comments on Order 2025-7-12.[16]  **Delta and Aeromexico** continue to object strenuously to the Department's proposed action, defending their joint venture as proconsumer and procompetitive.  They contend that their joint venture generates nearly 4,000 U.S. jobs, more than $310 million of U.S. gross domestic product (GDP), and more than $200 million of annual tourism spending in the United States.  They stress that if their joint venture is unwound, those economic benefits will disappear, including that up to $800 million in annual consumer benefits could evaporate, up to two dozen routes could be canceled, smaller aircraft could replace current narrowbodies, and tens of thousands of jobs could be threatened.  The two joint venture partners are concerned that the Department's approach would punish a U.S. company and a Mexican airline with significant U.S. ownership, while strengthening the hand of the Mexican state-sponsored airline, Mexicana.  They also argue that the Department has failed to apply the relevant statutory standards and violated the Administrative Procedure Act.

The **Asociacion Sindical de Pilotos Aviadores de Mexico**, representing Aeromexico's pilots, opposes the Department's proposed action, highlighting that current marketplace activities produce significant labor, economic, and public benefits for Americans and Mexicans alike.

While not taking a position on the merits of the joint venture, **Allegiant Air and Viva Aerobus** express support for the Department's approach but also serious reservations insofar as the two carriers may be unable to develop a planned immunized alliance in the U.S.-Mexico market.  Allegiant and Viva, which also have a request for ATI pending, appreciate that every application for approval of, and ATI for, a joint venture should be assessed on the specific facts, and they agree with the Department that the effectiveness of the Open Skies relationship is an important factor in the statutory competitive analysis.  They submit that any failings of the Delta/Aeromexico joint venture would not be found in a competing joint venture by Allegiant and Viva.  Allegiant and Viva state that the "ongoing delay in engaging in a fact specific assessment of the Allegiant/Viva alliance" is not only unfair but also anticompetitive and costly to consumers.  Allegiant and Viva ask the Department to address any "prerequisites" of U.S.-Mexico cooperation expeditiously and to cease preventing greater competition in markets outside of Mexico City, such as leisure or "beach" markets that would be served by an Allegiant/Viva alliance.  In a subsequent pleading, Allegiant and Viva state that "Open Skies" is not a prerequisite.

The **Department of Justice, Antitrust Division (DOJ)** underscores the importance of open market access for airlines wishing to serve a route for ensuring competition and endorses the Department's approach of reviewing the international regulatory framework (*i.e.*, whether there is an Open Skies agreement in law and practice) as a threshold requirement in reviewing

---

[16] **Exhaustless Inc.** and **Steven P. Endres** posted documents raising issues and concerns outside the scope of the proceeding.

international airline alliances.  DOJ also supports the Department's tentative decision not to renew the grant of ATI for Delta and Aeromexico.

**American Airlines** supports the Department's "decisive actions" to promote vibrant trade with foreign countries on terms that allow U.S. companies to compete fairly.  Absent a properly functioning Open Skies agreement, American says, U.S. carriers may be systematically disadvantaged and forced to compete on unfavorable terms, subjecting them to higher costs and distorting competition – and this is occurring now in the U.S.-Mexico market, American affirms. American supports the Department's tentative decision as consistent with longstanding approaches.

**United Airlines** takes no position on the merits of the Department's proposal but argues that Delta and Aeromexico have drawn false equivalencies between competitive effects in Mexico City, caused in large part by the restrictive actions of the GoM, and competitive effects in other congested cities such as Lisbon or Tokyo.  United believes that, in defending their joint venture, Delta and Aeromexico have ignored key distinctions in the operating and regulatory environment.[17]

## II.     STATUTORY FRAMEWORK

The Department reviews joint venture agreements involving foreign air transportation filed under 49 U.S.C. §§ 41309 and 41308 in accordance with its procedural regulations at 14 CFR Part 303. A person seeking approval of a transaction covered by 49 U.S.C. § 41309 may file an application.  Applications must be prepared and submitted consistent with the Department's procedures.  The applicant must state explicitly whether it seeks ATI under 49 U.S.C. § 41308.

When reviewing new requests, the Department undertakes a two-step process.  The first step, under Section 41309, involves determining whether the cooperation agreement is "adverse to the public interest," based on competitive factors (competitive effects analysis).  The Secretary shall approve the agreement if it is consistent with the public interest.  The Secretary shall disapprove, or after periodic review, end approval of, an agreement that substantially reduces or eliminates competition, unless the Secretary finds that the agreement is necessary to meet a serious transportation need or achieve important public benefits, and the transportation need cannot be met, or those benefits cannot be achieved, by reasonably available alternatives that are materially less anticompetitive.

The second step, under Section 41308, involves the request for ATI.  If the Secretary approves an agreement, he may exempt the parties to the agreement from the antitrust laws, when he decides it is required by the public interest, but only to the extent necessary to allow those parties to proceed with the transaction.  To determine whether an exemption is required by the public

---

[17] **JetBlue Airways** filed a letter in the docket, dated August 28, 2025, expressing concerns about airport access in markets where there are immunized alliances, including markets like Lisbon.  JetBlue indicates that the promise of an Open Skies policy is that new entrants and smaller carriers should not face barriers to entry, but rather should be able to succeed or fail in a competitive marketplace based on their commercial merit.  Embedded in JetBlue's letter is a motion for leave to file based upon good cause shown, which we grant.

interest, the Department conducts a detailed examination of public benefits (public benefits analysis). The Department's findings must be included in the final order approving or disapproving the agreement.

The Department has significant discretion to review past approvals and grants of antitrust immunity and to modify or revoke them as warranted. In its competitive analysis under Section 41309, the Department may modify, disapprove, or end any previously approved joint venture if, based on current facts and circumstances, the joint venture agreements have become adverse to the public interest, broadly defined, or they substantially reduce or eliminate competition without being necessary to meet a serious transportation need or to achieve important public benefits. In addition, in reviewing any ATI conferred previously in any Section 41309 transaction, the Department may at any time terminate or modify such a grant of ATI if it determines the ATI is not required by the public interest. Indeed, if the agreement under review is found to be adverse to the public interest under Section 41309, no grant of immunity under Section 41308 is possible. It was for that reason that the Department proposed to revoke the prior grant of ATI in Order 2025-7-12. After the Department found that the Delta/Aeromexico joint venture is adverse to the public interest (and substantially reduces competition) and must be disapproved, as a matter of law the prior grant of ATI must be revoked.

## III.  DECISION

After review of the objections, comments, and answers to objections on the record, the Department has decided to finalize the proposal in Order 2025-7-12, with some modifications, and end approval of and grant of ATI for the Delta/Aeromexico joint venture.

### A.  Explanation of the Decision

Changed Facts and Circumstances

The Department makes final the factual assessment from Order 2025-7-12, which incorporated by reference findings in Order 2025-7-11 describing the GoM's violations of the U.S.-Mexico Air Transport Agreement. Order 2025-7-12 identified significant and material changes to competitive conditions in U.S.-Mexico City and broader U.S.-Mexico markets in which the Delta/Aeromexico joint venture competes versus the Department's assessment in 2016 when the joint venture was initially approved and given a temporary grant of ATI. The following key facts and circumstances are firmly supported in the evidentiary record:

- Since 2022, the GoM has repeatedly distorted competition in the market in ways that are material to competition for passenger services, all-cargo services, passenger/combination services, entry into congested markets, predictability of entry across multiple markets, and with regard to ensuring a level playing field and equal opportunity to compete, including for airlines such as Delta and Aeromexico that operate with special permissions to coordinate prices and capacity without normal enforcement of the U.S. antitrust laws.[18]

---

[18] Order 2025-7-12 at 2, 18-19 (summarizing the GoM's actions and incorporating Order 2025-7-11).

- The GoM is not compliant with numerous provisions of the U.S.-Mexico Air Transport Agreement and thus is not acting consistently with all elements of a liberalized Open Skies agreement. These violations have deleterious implications for airline competition in the U.S.-Mexico market.[19]

- The competitive conditions in affected markets, at a minimum with respect to the GoM's ability to maintain a consistent and procompetitive regulatory framework, consistently have been poor for a number of years and have deteriorated further.[20]

- The Delta/Aeromexico joint venture includes price- and capacity-setting mechanisms that the parties would not implement without the approval of, and a grant of ATI from, the Department.[21]

- The Delta/Aeromexico joint venture has a predominant share of capacity in the U.S.-Mexico City market and a substantial share of the broader U.S.-Mexico market.[22]

- The Delta/Aeromexico joint venture partnership controls at least a predominant share of slots at MEX and has considerably more flexibility to adjust to adverse or changing circumstances at that airport or reductions in capacity than other competitors – even if those reductions also negatively impact Delta and Aeromexico.[23]

- Entry at MEX is severely restricted.[24] The slot administration process at MEX, and potentially other Mexican airports in the future, is non-transparent and needs reform to promote competition to and from Mexican gateways.[25]

- There are distortive effects in the market for cargo services to, from, and via Mexico City: all-cargo carriers were forced to absorb the cost of moving to new facilities involuntarily. Ongoing coordination between Delta and Aeromexico at MEX gives them commercial advantages in cargo carriage not available to their competitors by law.[26] Delta and Aeromexico have increased their share of a constrained and lucrative market for cargo services at MEX.[27]

---

[19] Order 2025-7-12 at 2, 18 and Objection of the JCA Partners to Supplemental Show Cause Order 2025-7-12 (Aug. 11, 2025) at 19 ("The JCA Partners do not dispute the Department's factual observations regarding the GOM's actions at MEX"), DOT-OST-2015-0070-0344 (hereinafter referred to as "Objection").

[20] Order 2025-7-12 at 19.

[21] Joint Application of Delta and Aeromexico for Renewed Approval of and Grant of Antitrust Immunity for Alliance Agreements (March 29, 2022) at 2 ("[C]losely integrated pricing, network planning, revenue management, joint sales, and other enhanced cooperation [are] made possible by the immunized JCA"), DOT-OST-2015-0070-236.

[22] Objection at 3 and Order 2025-7-12 at 32.

[23] Order 2016-11-2 at 15-17, Order 2016-12-13 at 16-18, and Order 2025-7-12 at 32.

[24] Order 2025-7-11 at 4 ("the GoM issued a Resolution on August 31, 2023, declaring MEX runway usage to be saturated and mandating that MEX operations be further reduced from 52 to 43 per hour effective with the Winter 2023/2024 traffic season"), DOT-OST-2025-0436-0001.

[25] Order 2025-7-12 at 19-20.

[26] Order 2025-7-12 at 2-3, 19, 21-22.

[27] Order 2025-7-12 at 22.

- Delta and Aeromexico have materially less incentive or ability to deliver public benefits that would not otherwise be possible without a grant of ATI given the restrictions at MEX and Aeromexico's hub at MEX.[28]

<u>Ending Approval Under Section 41309 and Termination of the Grant of ATI</u>

The Department makes final its tentative conclusions that the findings from 2016 supporting the approval of the Delta/Aeromexico joint venture and the relevant agreements submitted under Section 41309 are no longer valid and that currently the joint venture substantially reduces or eliminates competition in relevant markets and is adverse to the public interest.

Order 2025-7-12 recounted the findings from the 2016 orders conditionally approving and making a temporary grant of ATI and provided a "cross-walk" showing how current facts and circumstances in the U.S.-Mexico market no longer support continuation of the ATI.[29]  The Department affirms this review and determination.

Order 2025-7-12 also described detrimental competitive and public-benefits effects in sufficient detail to support a finding that the joint venture, in the context of current market and regulatory conditions, "substantially reduces or eliminates competition" as set forth in 49 U.S.C. § 41309. Order 2025-7-12 highlights the anticompetitive and distortive actions by the GoM, which are alone sufficient to support a conclusion under the statute that there is a substantial reduction of competition in relevant markets.  However, the Department makes clear in Order 2025-7-12 that its decision rests on the materiality of the changing competitive conditions in which the Department would expect the joint venture to compete.  The Department demonstrates a connection between the negative effects on competition caused by the GoM and further "downline" anticompetitive effects that the Department would expect from a price- and capacity-setting joint venture operating in those markets, especially in view of the scale achieved by Delta and Aeromexico and other particulars such as the carriers' commanding share of U.S.-MEX markets where entry is severely restricted.  In brief, the Delta/Aeromexico joint venture exacerbates competitive concerns and materially contributes to a substantial reduction in competition.[30]

In Order 2025-7-12, the Department looked at practical impacts and documented competitive concerns supporting corrective action, which the Department affirms here:

- Delta and Aeromexico's predominant share ("almost 60 percent") at MEX, the fourth-largest gateway to the United States, creates the possibility for anticompetitive and efficiency-reducing outcomes such as reduced growth, decreased capacity for lower-yield connecting traffic, and exclusionary conduct.[31]  The Department makes clear that these

---

[28] Order 2025-7-12 at 25-26.
[29] Order 2025-7-12 at 18, 24-27 (explaining that the findings from the 2016 approvals/grants of antitrust immunity were no longer valid and cross-referencing the specific findings with current evidence in the record).
[30] Order 2025-7-12 at 2-3, 19-28.
[31] Order 2025-7-12 at 19.

anticompetitive and efficiency-reducing effects are evident in potentially all U.S.-MEX markets actually or potentially served by Delta and Aeromexico in competition with other airlines, including, for illustration purposes, MEX-JFK, MEX-LAX, MEX-ORD, MEX-SEA, and MEX-BOS. These are relevant markets in which the lack of a procompetitive regulatory framework combines with the price- and capacity-setting flexibilities of a joint venture to yield serious and actionable concerns about the reduction of competition.

- Based on the GoM's interventionist and arbitrary capacity decisions in Mexico City, the Department sees a realistic possibility that the GoM could act in a similar manner at other congested gateways such as Cancun or Monterrey.[32] The Department makes clear that in this regard all markets in the U.S.-Mexico market that could potentially be served by Delta and Aeromexico are of concern. For illustration purposes, CUN-JFK and CUN-BOS would be two such markets.

- The GoM's stalled and retrenched approach to slot administration creates actual and potential harm across many U.S.-Mexico markets, not just those serving MEX. The GoM confiscated slots on spurious and unsupported grounds, refused to implement reforms suggested by Mexico's competition authority, and called into question the principle of historical rights, fairness, and new entry. In the midst of this ongoing policy change by the GoM, Delta and Aeromexico maintain the largest share of slots at MEX and a history of successfully navigating challenges through means that are not available to other carriers. The approval of and grant of ATI for the joint venture enables Delta and Aeromexico to use scale and coordinated action to achieve better outcomes than would be possible for other carriers in light of regulatory conditions.

- The GoM forced U.S. all-cargo carriers to exit MEX. This action was disruptive, costly, and it violated the U.S.-Mexico Air Transport Agreement; importantly, it denied all-cargo carriers a fair and equal opportunity to compete against passenger/combination carriers that remain able to carry cargo to and from MEX. In the midst of this government intervention, Delta and Aeromexico are able to use the approval of and grant of ATI to coordinate cargo operations to, from, and via MEX, creating a material advantage enabled by the grant of ATI. This coordinated advantage unnecessarily and artificially reduces competition in cargo markets to, from, and via MEX to other Mexican destinations, and limits innovation and choice outside of MEX by all-cargo operators.

Order 2025-7-12 listed a number of public interest factors from the Department's authorizing statutes – factors that are relevant to the competitive effects observed in the U.S.-Mexico market.[33] Throughout all economic matters, including the review of applications for approval of and a grant of ATI for a joint venture, the Department, as noted in Order 2025-7-12, is charged with "placing maximum reliance on competitive market forces," avoiding "conditions that would tend to allow at least one air carrier or foreign air carrier to unreasonably increase prices, reduce services, or exclude competition in air transportation," and "eliminating discrimination and unfair competitive practices faced by United States airlines in foreign air transportation,

---

[32] Order 2025-7-12 at 19-20.
[33] Order 2025-7-12 at 12-13.

including unreasonable restrictions on operations." Drawing upon these factors and the competitive and public benefits assessments, the Department tentatively determined that continuing the joint venture would be "adverse to the public interest."[34] The Department affirms that approach and determination here.

The Department also found tentatively (and affirms here) that the joint venture agreements substantially reduce competition under current market conditions. A joint venture that is found to reduce or eliminate competition substantially under Section 41309 cannot be approved unless the Department finds that the joint venture is necessary to meet a serious transportation need or to achieve important public benefits. As the Department has documented in this Final Order, and Orders 2025-7-12 and 2024-01-17, Delta and Aeromexico's joint venture does not meet this bar. The anticompetitive effects and distortions that the Department has documented are significant, and they fundamentally undermine the functioning of a competitive market where carriers have the right to enter new markets and compete on a fair and equal basis. Order 2025-7-12 did not find any compelling facts and circumstances to override this assessment. In short, using the language of the statute, the Department did not find that, despite a substantial reduction in competition, the joint venture is necessary to meet a serious transportation need or to achieve important public benefits.

In view of the findings and conclusions above, the Department concludes that it should exercise its authority under 49 U.S.C. § 41309(b)(1) to "end approval" of the joint venture agreement and related agreements and does therefore find under Section 41309(b) that those agreements substantially reduce competition and should be disapproved.[35]

<u>Review Under Section 41308</u>

Based on the same facts supporting the Department's decision that Delta and Aeromexico cannot meet the standards for approval of the joint venture under Section 41309, Order 2025-7-12 made clear that they cannot meet the standards for a grant of ATI to implement the joint venture under Section 41308. The standards required for a grant of ATI under Section 41308 are higher than those of Section 41309 (including that a grant of ATI is "required by the public interest").[36] Furthermore, as discussed above, having disapproved the joint venture agreements, the Department is required to revoke the related grant of ATI as no longer being necessary to proceed with the transaction approved under Section 41309.

The Department's conclusions using the standards in Sections 41309 and 41308 are consistent with the rationales provided in past ATI cases, including the first grant of ATI in this docket. The changes in market conditions have wide-ranging implications. A functioning, pro-

---

[34] Order 2025-7-12 at 38.
[35] The Department also finds that, notwithstanding any showing that the agreements substantially reduce or eliminate competition, that the agreements are adverse to the public interest under Section 41309. This finding results in the same necessity to disapprove (or end approval of) the alliance agreements and withdraw ATI under Section 41308.
[36] Order 2025-7-12 at 14, 17 (describing the standards in Section 41308 and stating that the Department's analysis in this matter, as it relates to analyzing the regulatory framework, is supported independently by Section 41308).

competitive market is essential to ensure that immunized joint venture partners have adequate economic incentives to pass along the benefits of their integrated commercial arrangements to consumers.[37]  Absent a competitive market landscape, including a procompetitive regulatory framework as a critical element, the airlines cannot show, to the Department's satisfaction under the "required by the public interest standard," that the joint venture will produce substantial public benefits that would not otherwise be achieved through vigorous competition and arms-length commercial cooperation.[38]  In addition, in the absence of an approved joint venture under Section 41309, there is no basis or need for a grant of ATI under Section 41308.  The Department thus withdraws the previous grant.

The Pending 2022 Application

In 2016, when it first granted Delta and Aeromexico approval and ATI, the Department intended for those approvals to be time-limited so that it could monitor and periodically review market developments.[39]  Given this posture, the Department offered Delta and Aeromexico the option to submit a new application for approval of and a grant of ATI on an ongoing basis.  Delta and Aeromexico submitted their "renewal" application in 2022.[40]

The Department's decision here exercises the statutory authorities to review immunized joint ventures at any time.  Changes to competitive conditions in the marketplace, including government-imposed distortions of competition, are affecting the joint venture operations and competitors *now*.  Any actual or potential harm is affecting stakeholders, including consumers, *now*.  If there are sufficient facts and circumstances to justify a modification of the authorities, it is logical and appropriate to take action with respect to the joint venture activities *now*.  Further, this Final Order deals with the merits of the matter in accordance with the public interest factors provided by Congress.

At the same time, the Department's decision does not change the status quo by dismissing or denying the 2022 application.  If conditions change again, Delta and Aeromexico will have the opportunity to refresh the record and seek to demonstrate that a new joint venture will meet statutory standards.

### B.  Response to Comments

The Department received several comments in response to Order 2025-7-12, with some in support, some neutral, and some in opposition to the proposal to end approval of and terminate the ATI for the alliance.  A threshold issue emerges from the comments of Delta and Aeromexico that should be addressed at the outset.

---

[37] *See* Show Cause Order, Order 2008-4-17 (Apr. 9, 2008) at 13, DOT-OST-2007-28644-0174; and *see* Final Order, Order 2008-5-32 (May 22, 2008) at 2, DOT-OST-2007-28644-0185.

[38] *See* Order 2016-12-13 at 19.

[39] Order 2016-12-13 at 26-28.

[40] Joint Application of Delta and Aeromexico for Renewed Approval of and Grant of Antitrust Immunity for Alliance Agreements (March 29, 2022), DOT-OST-2015-0070-0236.

The thrust of Delta and Aeromexico's comments is that their joint venture is unquestionably procompetitive and that many of the economic benefits in the U.S.-Mexico market, ranging from a dynamic and competitive market to broader positive effects on GDP and job base, depend upon the joint venture. Were the Department to withdraw its grant of ATI, they argue, those benefits would "evaporate," and severe disruptions could occur, including the cancelation of up to two dozen services, the loss of tens of thousands of jobs, and a reduction in GDP.[41]

Over the course of 18 months, Delta and Aeromexico have consistently argued that the Department's reconsideration of the joint venture is unacceptable and unlawful. They urge the Department to start a review from scratch and not consider current distortions and their materiality to competition by the joint venture. According to this view, the continuing operation of the Delta/Aeromexico joint venture is a critical enabler of travel in the U.S.-Mexico air transport market and, therefore, the Department cannot take any action in this matter.

The basis for a decision is straightforward, focusing on the public interest. As the Department discusses further below, it does not agree that this action will result in net-negative consequences for the traveling and shipping public, or that the joint venture is the critical factor in maintaining a competitive marketplace.

To the contrary, the joint venture is exacerbating the competitive issues that are present and growing. An immunized alliance is not an entitlement. Far too much is at stake when the question is whether two airlines should comply with the U.S. antitrust laws. "Immunizing conduct from the antitrust laws … risks undermining our free market system and so must be done sparingly, carefully, and only in pursuit of legitimate—and actually realized—benefits."[42] Airlines seeking to obtain or maintain an immunized alliance with price- and capacity-setting mechanisms must meet rigorous statutory standards on an ongoing basis and demonstrate to the Department's satisfaction that their arrangements are and will continue to be in the public interest, broadly defined. If circumstances change after an approval is given, the Department may identify those changed circumstances, consider the materiality of the circumstances to the findings and to competition in joint venture markets, and modify the decision to any extent necessary to meet the statutory standards and the public interest. If the Department determines that any critical findings underpinning the prior decision are no longer valid, the Department will withdraw prior approvals until circumstances are more favorable. This approach will safeguard the positive benefits for stakeholders, including consumers, in the market, and prevent unnecessary harm to competition.

The Department has provided full and adequate due process to the joint venture partners here, even as conditions worsened. Order 2025-7-12 detailed the negative competitive effects caused by the GoM that have implications not just in U.S.-Mexico City markets, but also in other U.S.-Mexico markets (including by incorporating by reference Order 2025-7-11). The Department then identified Delta and Aeromexico as significant competitors in many of these markets and

---

[41] Objection at 1-5.
[42] Comments of the U.S. Department of Justice Antitrust Division (Aug. 8, 2025) at 2, DOT-OST-2015-0070-0342.

the predominant competitors in the U.S.-Mexico City market in which the distortive effects are having their greatest impact at the moment. The Department explained that the price- and capacity-setting mechanisms in the joint venture would provide Delta and Aeromexico with unique privileges that are unavailable to other competitors, such as the ability to shift capacity from one airline to the other, that could exacerbate the distortive effects of the GoM's policies and increase the actual and potential harm for U.S. stakeholders. Under current statutory standards, these impacts alone would be sufficient to support a decision to disapprove the joint venture agreements and deny or withdraw the grant of ATI.

The Department went on to conduct an Additional Factual Assessment of Competitive Conditions in Order 2025-7-12. The Department did so to "further support the Department's decision to terminate the Delta/Aeromexico ATI and show why the Open Skies regulatory framework is critical."[43] Among other things, the Department tentatively found: that "[s]ervices to the Mexico City market are not meaningfully contestable, and competition and competitive benefits for consumers seem to be decreasing"; that analysis of "scheduled capacity since the implementation of the [joint venture] shows that Delta and Aeromexico have delivered substandard growth in the U.S.-Mexico market when compared to peers"; that the "growth that the Department hoped to see, enabled by a grant of ATI, does not seem to have materialized"; that, on balance, "current information suggests that Delta's and Aeromexico's capacity increases are less than those of their competitors, undermining a case that the ATI is enabling more public benefits than would otherwise be possible without a grant of antitrust immunity"; and that "traffic data both prior to the full implementation of [the] alliance in 2016 versus 2024 indicates that on U.S.-MEX routes there is marked reduction in the amount of connectivity at both the U.S. origin and Mexico City than there was before the implementation of the [joint venture]."[44]

Delta and Aeromexico appear largely to accept the facts and circumstances of Mexico's competitive distortions. In fact, Delta and Aeromexico indicate that they too are victims,[45] underscoring the timeliness of the Department's decision to act now to protect the public interest. Failure to act would further compound the distortive competitive effects and become part of the problem. This choice of timing reflects the Department's efforts to balance the costs and benefits of ongoing forbearance with the costs and benefits to the traveling public of taking corrective action.

### *Compliance with the Administrative Procedure Act*

Delta and Aeromexico dedicate a substantial portion of their response to Order 2025-7-12, arguing that the Department's proposed approach in Order 2025-7-12 is "fatally flawed" under the Administrative Procedure Act. Their primary arguments are that the Department has not applied the correct statutory standards, has not dealt with a key aspect of "the problem," has departed from past precedent without explanation, has failed to consider other alternatives to its

---

[43] Order 2025-7-12 at 31.
[44] Order 2025-7-12 at 31-37.
[45] Objection at 23.

action, and has failed to engage with key facts and studies submitted by the airlines. The Department will address these arguments in turn.

### *Applying 49 U.S.C. §§ 41309 and 41308*

Delta and Aeromexico argue that the Department has not applied the relevant statutory standards in Sections 41309 and 41308 to their immunized agreements. They emphasize that, in addition to superimposing a new requirement on the statute – the Open Skies predicate – the Department went through a process of disapproving and withdrawing the grant of immunity from the joint venture without showing that it "substantially reduces or eliminates competition," a showing they believe is required by Section 41309.

The Department disagrees. Order 2025-7-12 contained a reasoned analysis of the statutory requirements set forth in Sections 41309 and 41308. Order 2025-7-12 also specifically applied those standards to the present facts and circumstances. Still, Delta and Aeromexico, which previously supported this mode of analysis,[46] are unconvinced. They make the nuanced argument that, while the actions of foreign governments affecting competitive conditions in the market may be relevant to a competition analysis (but not, apparently, the primary focus), an Open Skies predicate is an invented step not supported by the statutory authority.[47]

As explained in Order 2025-7-12, the Department considers the applicable regulatory framework when it evaluates an international joint venture under 49 U.S.C. §§ 41309 and 41308.[48] An Open Skies regulatory framework is necessary under the competition and public interest analysis required by Sections 41309 and 41308 but not sufficient to obtain approval of and maintain a grant of ATI. As defined by the Department, an Open Skies agreement provides for, among other things, open entry, market-based pricing, and open route rights. If these essential competitive-enabling elements are present in law and in practice, the Department can reliably evaluate the structural impact of the proposed joint venture and its likely effects on consumers and the overall public interest.

Delta and Aeromexico argue that the Department engaged in an unsupported "Step 0" analysis under the statutory scheme, failing to use the tests and language provided therein. However, the basis for the Department's actions in this case is the statutory factors specified in 49 U.S.C. § 41309: that under present circumstances the joint venture agreements are adverse to the public interest and substantially reduces competition. While a "preliminary test" is not found expressly in the statutory language of Sections 41308 or 41309, compliance with an Open Skies agreement has a statutory foundation in the public interest and competition analysis required by Section 41309 and, for that matter, Section 41308.[49] Mexico's violations of the U.S.-Mexico Air

---

[46] Order 2025-7-12 at footnotes 62-63.
[47] Objection at 6, 36.
[48] Order 2025-7-12 at 15.
[49] *See* Comments of the U.S. Department of Justice Antitrust Division at 9 ("DOT articulated specific competitive dynamics in international air transportation that support the significance of open market access as embodied in Open Skies Agreements") and at 11 ("The fact that an entry barrier is created by government regulation does not make it

Transport Agreement, an Open Skies agreement by its terms, inform the Department's consideration of the pertinent statutory factors. The Department's decision, however, is based on an overall analysis of the statutory factors as applied to the joint venture. The Department considered, in addition to the effect on the market of Mexico's violations of the U.S.-Mexico Air Transport Agreement, the materiality of the change in market conditions on the operations of the joint venture, the joint venture's predominant market share at MEX, spillover effects in markets beyond Mexico City, and the ability of the joint venture to leverage its position under a grant of ATI to disadvantage competitors.

The argument that the Department did not conduct a proper analytical assessment under the statute – that it did not apply the "substantially reduce or eliminate competition standard" under 49 U.S.C. § 41309(b) – must also fail. The plain text of Order 2025-7-12 invalidates the point.[50] To the extent that Delta and Aeromexico believe the Department must conduct a longer and more particularized analysis of all potentially relevant markets, the Department disagrees. As noted above, the Department's analysis under Section 41309 focused first on identifying the changed circumstances in the competitive landscape in several critical and relevant markets to, from, and via Mexico City, and then on assessing whether those circumstances undermined the findings granting ATI.

Delta and Aeromexico argue that "even accepting the Department's own Open Skies policy, the Department has it backward. Under that policy, disapproval of a cooperative agreement is not an appropriate consequence of an Open Skies breach; the only permissible consequence under that policy is the loss of ATI."[51] Then, they undertake an elaborate statutory construction that is unmoored from a plain language reading of the statute. By way of example, Delta and Aeromexico argue that "[b]ecause the Department did not correctly apply Step 1 of the statutory analysis to the JCA–even accepting the validity of the Department's Open Skies policy–the Department must re-do that analysis before it can be in a position to conclude that the JCA no longer meets the ATI test in Step 2 of the statutory analysis."[52] They continue: "even if the Open Skies predicate were appropriate at Step 2 of the statutory analysis, the Department could apply it here only by addressing each of the 11 Open Skies factors and determining which the G[o]M has allegedly violated."

The Department reemphasizes that this decision is based on its determination that the Delta-Aeromexico joint venture is adverse to the public interest and substantially reduces competition. Based upon facts and circumstances established in the record, the Department has determined

---

any less relevant. Consideration of similar issues in other industries – such as the effects of patents, professional licensing requirements, and regulatory approvals required to sell pharmaceuticals or pesticides – is commonplace in antitrust competitive effects analysis. The competition concern with market access is particularly acute in the international air transportation context in which a foreign national regulatory authority with control over critical airport infrastructure may have an incentive to preference foreign national carriers…."), DOT-OST-2015-0070-0342.

[50] *See, e.g.*, Order 2025-7-12 at 25.

[51] Objection at 40.

[52] "JCA" is in reference to the joint cooperative agreement representing the antitrust-immunized joint venture between Delta and Aeromexico.

that the joint venture no longer meets the statutory standards in Sections 41309 and 41308.  The Department notes that the Department of Justice's Antitrust Division commented that the "record in this matter makes clear that consideration of the regulatory impact on market competition was integral to DOT's well-reasoned decision not to renew antitrust immunity for the Delta-Aeromexico Joint Venture based on the facts presented in this case."[53]

### *Addressing Key Aspects of the Problem*

Delta and Aeromexico argue that the Department disregards multiple key aspects of the problem and otherwise fails to provide sufficient reasoning.  The crux of their argument is that Order 2025-7-12 focuses too much on competitive effects at MEX, which is a single airport served by the joint venture partners in the U.S.-Mexico market.[54]

The Department's "focus" on MEX is warranted by several factors evident in the record.  As Delta and Aeromexico indicate in their pleadings, "MEX is the centerpiece of the JCA Partners' joint transborder network, a critical hub for both local and connecting traffic."[55]  Without a properly functioning regulatory framework in place at MEX, the Department would not expect the same degree of competitive and public benefits to emerge from the Delta/Aeromexico joint venture with its central hub at MEX.  Using the measurement provided by the joint venture partners, 21 percent of the traffic and flights between the United States and Mexico operate to/from MEX.[56]  The Department's 2016 orders identified approximately 5 million passengers per year between the United States and Mexico City,[57] and while the percentage of total traffic in this market appears to be gradually falling relative to other U.S.-Mexico markets, the market is still growing in absolute terms and still retains a substantial percentage of total U.S.-Mexico traffic.

Based on any of these figures, MEX is a major and critical gateway.  The Delta/Aeromexico joint venture has a predominant position at this gateway – controlling approximately 60 percent of the slots at the airport – and enjoys unique flexibilities by virtue of the ATI.  These flexibilities include revenue sharing, shifting flights between the airlines to address slot shortages and preserve historical rights, and jointly setting pricing and capacity.  Indeed, as documented herein, they have taken advantage of this situation to add additional services in U.S. markets whereas other competitors could not to the same degree, and they have shifted their focus from using MEX as a connecting hub airport to one focused more on higher-profitability nonstop traffic.[58]  In circumstances where competition is diminishing and/or market distortions exist, these flexibilities become unfair competitive advantages.  The Department affirms the findings in

---

[53] Comments of the U.S. Department of Justice Antitrust Division (Aug. 8, 2025) at 13, DOT-OST-2015-0070-0342.
[54] Objection at 43, 48.
[55] Objection at 24.
[56] Objection at 57.
[57] Order 2016-11-12 at 15.
[58] Order 2025-7-12 at 37.

Order 2025-7-12 on these points and assesses that the competitive issues observed today at MEX are sufficient to disapprove the Delta/Aeromexico joint venture and withdraw the grant of ATI.

Further, in the context of reviewing the Delta/Aeromexico joint venture, MEX is not one market of concern, but many. The market distortions at MEX, compounded by the predominant position of the joint venture partners, raise concerns in multiple city-pair markets served from MEX, including JFK-MEX (an overlap market), LAX-MEX (a market with intermittent overlapping services), and other markets that might benefit from more vigorous competition between the joint venture partners or new entry from their competitors.

Competition between and among all-cargo and combination cargo services is also significant enough by itself to merit corrective action. Perhaps the most egregious and harmful action by the GoM is the cargo decree requiring all-cargo carriers to move their services from MEX. This decree prevents all-cargo carriers from competing effectively against combination carriers in the provision of cargo services between the United States and MEX and beyond to the greater Mexico market on a fair and equal basis. As noted in Order 2025-7-12, Delta and Aeromexico's cargo share for U.S.-MEX has dramatically increased to 73 percent.[59] Under the current distorted regulatory framework, Aeromexico has the distinct advantage at MEX where it operates a large network to destinations throughout Mexico – and this advantage impacts competition for premium and time-definite services in the broader U.S.-Mexico market. Delta and Aeromexico's argument that, unlike passengers, cargo can be routed via different hubs because it does not care how it travels is unpersuasive, because, among other things, time-definite cargo products carry a revenue premium commensurate with the speed of delivery. Aeromexico is the only hubbing carrier in Mexico and MEX and, as the largest slot holder at MEX, serves the most destinations throughout the country. No other cargo carrier can replicate that network. The Department has ample reason to be concerned about maintaining a grant of ATI to Aeromexico under these circumstances.

The Department's concerns extend to the broader U.S.-Mexico market. The GoM's policies giving rise to particular decisions at MEX are not isolated effects of unintentional mistakes; they are part of a pattern of government interventions at odds with a liberalized Open Skies framework that make the market less competitive. Using Cancun as an example, the Department would be concerned that the prospect of future arbitrary action could affect competition to and from that congested airport, with potential impacts on the competition offered by immunized joint ventures. Finally, Delta and Aeromexico argue that access issues at MEX are not as profound as the Department suggests. To support their argument, Delta and Aeromexico state that the Department's claim in Order 2025-7-12 that "no new carrier has entered the U.S-MEX market since" 2016 is false; that Viva entered in 2017 and has grown since then to operate eight percent of U.S.-MEX flights.[60] The Department notes that Delta and Aeromexico omit a crucial part of the sentence in Order 2025-7-12, which reads, *"[o]ther than the attempts made through the slot divestiture process*, no new carrier has entered the U.S.-MEX market since that time"

---

[59] Order 2025-7-12 at 22.
[60] Objection at 27.

(emphasis added).[61]  Viva was a recipient of the Department's slot divestiture process and began U.S.-MEX services in December 2017 with flights to Las Vegas and then subsequently added New York-JFK with "remedy slots" secured by the Department.  The data show that Viva has expanded its footprint modestly at MEX, serving additional destinations.  During this time period, an important competitor, Interjet, exited the market and the GoM redistributed a significant portion of Interjet's MEX slots to Viva, allowing Viva to further expand its services from MEX.[62]  The Department believes that, despite Viva's modest expansion, the distortions caused by the GoM have limited growth and network adjustments by many carriers such that an ongoing grant of ATI is no longer justified.

### Consistent Application of ATI

Delta and Aeromexico argue that the Department has departed from past precedent without explanation, and therefore acted in an arbitrary and capricious manner, by treating this case differently than past ATI cases and by holding the carriers to a different standard.  They argue that Tokyo-Haneda (HND), London-Heathrow (LHR), and Lisbon (LIS) are just as congested as MEX, but the Department has not attempted to withdraw its grant of ATI from joint ventures operating at those airports.

The Department is concerned about the impact of congestion and airport access on competition where immunized joint ventures operate.  However, there is no inconsistency or infirmity in the Department's decision to act in this case.  There is a distinction here.  This is the only matter in which there are established facts and circumstances to show that the foreign partner, in this case the GoM, is unacceptably distorting competition in a manner that directly undermines the findings of previous orders approving and granting ATI in the relevant markets.  While the Department does not preclude the possibility that similar facts and circumstances could be established in future matters involving other markets, the comments by Delta and Aeromexico do not provide any specific allegations or actionable information, other than to point out congestion at other global gateways.  As American and United point out in their filings, Mexico's issues complying with the air services agreement in ways that distort competition are not analogous to the issues faced by airlines in other markets at this point in time.  The Department also notes that Delta, in claiming inconsistent treatment, ignores the fact that it too enjoys ATI in all three of the examples it cites (HND, LHR and LIS) via its partnerships with Korean Air and the Blue Skies joint venture.

### Considering Reasonable Alternatives

Delta and Aeromexico insist that the Department failed to consider alternatives to its action in violation of the Administrative Procedure Act.  They repeat the alternatives that the Department considered explicitly in Order 2025-7-12,[63] including letting the Department's Part 213 action

---

[61] Order 2025-7-12 at 32.
[62] *See* Objection at 28; *see also* Answer of Concesionaria Vuela Compania de Aviacion, S.A.P.I. de C.V. dba Volaris (Feb. 2, 2023) at footnote 19, DOT-OST-2021-0152-0042.
[63] *See, e.g.*, Order 2025-7-12 at 28-31.

run its course, taking action under 49 U.S.C. § 41310, invoking consultations or arbitration under the U.S.-Mexico Air Transport Agreement, and finally, carving out U.S.-MEX cargo operations in lieu of ending approval of and grant of ATI for the existing alliance agreements.

The carriers misread the Department's orders, asserting that disapproval of the joint venture (and termination of the grant of ATI) is a misdirected attempt to enact countermeasures against Mexico and thus punish the joint venture partners unfairly for actions taken by the GoM. That the Department's decision might induce the GoM to comply with the U.S.-Mexico Air Transport Agreement is neither wrong nor undesirable. But it is not the Department's objective in this proceeding. The objective is to assess the extent to which there are issues affecting competition in the markets served by the joint venture and ensure that approved joint ventures and grants of ATI remain consistent with statutory standards and the public interest. The Department will continue to reserve the right to take, or not take, other actions to address its concerns in the bilateral U.S.-Mexico market. Here, the Department is addressing the anticompetitive effects made worse by the approved and immunized joint venture. The finalized actions in the Order are a consequence of the present market conditions and the joint venture operations – not a means to rectify the GoM's actions. As stated in Order 2025-7-12, even addressing the compliance concerns in the bilateral market "does not necessarily lead to the continuation of grants of ATI in the U.S.-Mexico market."[64]

With respect to the cargo carveout alternative, Delta and Aeromexico benefit from the inability of all-cargo carriers to operate at MEX and from seamlessly interlining cargo, particularly lucrative time-sensitive cargo, at MEX to other destinations in Mexico. These represent competitive disadvantages for all-cargo and combination carriers operating at Felipe Angeles International Airport (NLU) or other less preferred airports. Even if Delta and Aeromexico had no exclusivity provisions on partnerships, all-cargo/combination carriers operating at NLU would still have to spend up to two hours trucking cargo on two-lane roads from NLU to MEX, then clear the cargo through another airport for transfer to Aeromexico belly-cargo operations.[65] These requirements are substantially more onerous given that a three-hour transfer process reduces speed to destination – the primary attribute of time-definite premium cargo products. Not only does a carve out not solve the broader market access problem at MEX for both combination and cargo carriers, it would have to be accompanied by a number of additional regulations and oversight by the Department to be effective: (1) prohibiting exclusivity provisions of Delta and Aeromexico partnerships; (2) requiring that Aeromexico interline with competitors; and (3) requiring Aeromexico to interline cargo at the same rates with the same degree of inventory and capacity access as Aeromexico provides Delta. Even then, such conditions on Delta-Aeromexico could not compensate for the time penalty that carriers forced

---

[64] Order 2025-7-12 at 29.
[65] Order 2025-7-12 at 21.

to operate at other airports will continue to face, creating a permanent structural competitive disadvantage for those carriers.

In sum, the Department considered reasonable alternatives when it made its decision to revoke its approval of the joint venture agreements and grant of ATI.

### *Providing Substantial Evidence and Adequate Reasoning*

According to Delta and Aeromexico, the Department's decision lacks substantial evidence, is internally inconsistent, and does not provide adequate reasoning. Notably, Delta and Aeromexico assert that the Department manufactured and misapplied statistics, failed to engage with an assessment by expert consultants in the 2022 application and Delta's objections, and did not demonstrate harm.

<u>Growth and Connectivity</u>

The Department reviewed these assertions and the data provided by Delta and Aeromexico and is aware that the carriers are particularly concerned with the assessment that their growth in the U.S.-Mexico market is "substandard," which is to say that despite their grant of ATI they grew in the market at a slower pace than other competitors. If true, this would undermine a primary basis of the grant of ATI, which is that the joint venture will produce greater public benefits than would otherwise occur absent a grant of ATI.

Order 2025-7-12 assessed the capacity growth comparing 2015 as a base year versus subsequent years. Delta and Aeromexico respond by claiming that the Department should have chosen 2016 as the base year, but the Department chose 2015 because 2015 was the year in which Delta and Aeromexico initially submitted their application for ATI to the Department.[66] The Department chose 2015 as a means of comparison in a year where there was no ATI to subsequent years in which Delta and Aeromexico enjoyed their grant of ATI. Delta and Aeromexico also fault the Department for comparing their growth against all other carriers operating in the U.S.-Mexico market, including Mexican and U.S. Low Cost Carriers (LCCs), saying that the growth of LCCs post the grant of ATI was disproportionately high and skewed the Department's analysis.[67] In citing service benefits attributable to ATI, Delta and Aeromexico conflate benefits arising from the newly implemented air services agreement and the expanded slot portfolios of Aeromexico, Volaris, and Viva Aerobus obtained from Interjet's bankruptcy. The Department refutes this argument, as the base for the Department's comparison included all other carriers, including large U.S. carriers that already had large shares in the U.S.-Mexico market, as well as smaller carriers that ended up growing. Consequently, the Department's analysis in Order 2025-7-12 took into account both the higher growth of the LCCs enabled by the open entry provisions of the newly implemented U.S.-Mexico Air Transport Agreement, as well as the comparatively lower growth of other carriers in its analysis.[68] Regardless of whether the Department chose

---

[66] Objection at 11-12, 20.
[67] Objection at 11-12.
[68] Order 2025-7-12 at 35.

2015 or 2016 as Delta and Aeromexico prefer, and regardless of the carrier set against which the Department compared market growth, a pro-competitive joint venture should have shown substantial growth by both joint venture partners in all relevant U.S.-Mexico markets.  It did not, as demonstrated in Order 2025-7-12.[69]

The primary public benefit of ATI is the reduction in double marginalization or multiple markups on itineraries involving travel on both carriers.  Experience has shown that, in early phases of the implementation of a joint venture, traffic volumes on connecting routes increase significantly and joint venture partners increase capacity to/from their hubs to carry increasing numbers of connecting passengers across their networks.  It is reasonable to expect that MEX, as the primary hub of Aeromexico and the fourth largest international gateway to/from the United States, would support a substantial increase in connecting traffic once the two networks were linked in an immunized joint venture.

The Department's analysis in Order 2025-7-12 shows that Delta and Aeromexico did not prioritize connectivity as expected.  The Department observed that Delta and Aeromexico use MEX more as an origination-and-destination (O&D) market than as a hub.[70]  Delta and Aeromexico state that connections to in-scope destinations within Mexico have increased, which they characterize as consistent with expectations.  Delta and Aeromexico admit that overall connections beyond MEX are down, which is the primary issue that the Department finds with the nature of the joint venture.  As the Department notes in Order 2025-7-12, on Aeromexico-operated flights from the United States to Mexico City, nonstop traffic ending in Mexico City increased by 32 points, from 44 percent pre-joint venture to 76 percent after implementation, while on Delta-operated flights from the United States to Mexico City, nonstop traffic ending in Mexico City increased by 23 points, from 28 percent to 51 percent.[71]

This result is precisely the opposite of what the Department expects to see post implementation of an immunized alliance.  In this case, the actions of the GoM, as documented extensively in this order and in Order 2025-7-12, likely have affected the incentives for the joint venture partners to pass along the benefits of the alliance to consumers.  This conclusion is reflected in lower levels of connectivity at the largest (by far) Mexican hub – where the primary benefits of the reduction in double marginalization and tremendous increase in connecting traffic have not been nearly as substantial as in other joint ventures.  This fact suggests that Delta and Aeromexico are protecting high-end, nonstop O&D revenue rather than providing more capacity to carry more passengers in one- or two-stop markets involving Mexican domestic segments operated by Aeromexico.

<u>Keating Analysis</u>

Order 2025-7-12 reviewed and responded to the work submitted by Bryan Keating on behalf of Delta and Aeromexico.  Keating claims that withdrawing the grant of ATI would lead to

---

[69] Order 2025-7-12 at 34-35.
[70] Order 2025-7-12 at 37.
[71] Order 2025-7-12 at 37.

irreparable economic harm to communities in the United States and Mexico. He goes on to conclude that consumer harm could reach $800 million and, as summarized by Delta and Aeromexico in their Objection, that the joint venture "generates nearly 4,000 U.S. jobs, more than $310 million of U.S. GDP, and more than $200 million of annual tourism spending in the United States." Citing Keating's work, the carriers assert that "[i]f Delta and Aeromexico's Joint Cooperation Agreement ('JCA') is unwound, those economic benefits for the United States will evaporate …."[72]

Keating's paper was "based largely on Delta's network planners' identification of 21 routes, either operating or planned, that are *at risk* of cancellation or reduced service in the event of the dissolution of the Joint Cooperative agreement...." The Department has multiple serious concerns about the accuracy of the assessment, including the assumption that when the at-risk routes are canceled or reduced the existing aircraft will be parked and not utilized elsewhere.[73]

As a basis for his estimated impact figures, Keating focuses on markets that he claims would be withdrawn should ATI cease. However, he does not acknowledge that some markets have proven not to be viable, even for an immunized alliance. For example, since receiving ATI, Delta and Aeromexico announced, began selling, and have since withdrawn from service on routes from Monterrey to New York, Salt Lake City, and Los Angeles, and from Guadalajara to Detroit. Other routes that Aeromexico has announced, such as Mexico City to Raleigh/Durham, continue to be sold and have not been withdrawn, suggesting that those are more viable.

While the GoM has arbitrarily removed slots from longstanding slot holders at MEX, access remains opaque, and new operators cannot establish a foothold at this important airport. Meanwhile, Delta and Aeromexico, which together hold more than 60 percent of the slots, are able to expand their flying in MEX-U.S. markets and continue to add flights at MEX to the U.S. even when others cannot do so. Aeromexico began service from Tampa, Florida, to Mexico City in July 2024, and Aeromexico also began service from Mexico City to Newark in Winter 2024 and Phoenix and Philadelphia in 2025. Additional services such as these indicate that Aeromexico and Delta continue to search for growth opportunities in what is the largest international market from the United States while the joint venture's competitors cannot, thereby reinforcing the anticompetitive regulatory environment.

Given some of the flaws identified in his approach, the Department, through its own analysis, has determined that Keating's $800 million estimate is inflated. Furthermore, several assumptions he makes regarding the 21 routes and associated 1,062 one-stop connecting routes that would be at risk are so questionable that they undermine the credibility of his assessment. For example:

- Keating provides no independent assessment of the Delta/Aeromexico network going forward, relying exclusively on Delta's network planning team without incorporating the

---

[72] Objection at 1.
[73] Order 2025-7-12 at 30-31.

views of Aeromexico.  At points, the author assumes what was identified as *at risk* is a given outcome, treating arguments of probability as certainty.

- Delta's network planning team identified impacted routes by comparing the antitrust immunized joint venture to run-of-the-mill arms-length codesharing.  However, the choice of arms-length codesharing as the counterfactual overestimates the reality and ignores that the parties are still SkyTeam members, that they have a strategic partnership, and that they have aligned incentives going well beyond a typical codeshare relationship, especially given that Delta holds a 20 percent ownership stake in Aeromexico.  Delta's history with other partners where ATI was not pursued due to the Department's action (*i.e.*, Delta-WestJet) shows that the carrier is incentivized and likely to pursue an alternative path beyond the typical arms-length arrangement to produce similar benefits.

- Keating makes no attempt to quantify fare impacts as a result of taking away ATI, including on nonstop overlap routes (*e.g.*, JFK-MEX) where the reintroduction of an additional competitor would likely lead to lower fares.  The author does, however, note portions of the economic literature that support his argument – namely, that joint venture cooperation is estimated to decrease *connecting* fares modestly – without referencing the literature's evidence contrary to his argument: joint venture cooperation is estimated to increase *gateway-to-gateway* fares modestly.[74]

- Keating uses market stimulation curves for routes originating in Europe for 2005-2015 (footnote 25) as a proxy for calculating demand that is stimulated by nonstop routes in the U.S.-Mexico market in 2024.  This approach likely results in an overestimate due to the short-haul and more domestic-like nature of transborder U.S.-Mexico travel versus intercontinental travel.

- In the QSI analysis (footnote 26), Keating is annualizing a week in July 2024 to reflect the year.  July is a peak demand travel month and annualizing July data will also likely lead to a significant overestimate.

- Keating's numbers are likely inflated as at least five of the routes he identifies as being part of his 21-route analysis were never started or have only operated minimal frequencies.  Even some that were started, such as Atlanta-Merida (ATLMID), have since ceased operating, indicating that even with the support of ATI, some markets simply are not viable.

With regard to the "nearly 4,000 U.S. jobs," Keating states that the elimination of the joint venture would put at risk "3,779 jobs in the United States" as the "at-risk frequencies directly and indirectly support thousands of jobs, including pilots, flight attendants, reservations staff, maintenance staff, customer service staff, and management.  They further support non-airlines jobs through the purchase of goods and services by airlines.  Finally, these frequencies support tourism jobs...."[75] The Department has reservations about these estimates.  Keating incorrectly

---

[74] *See Pricing by International Airline Alliances: A Retrospective Study Using Supplementary Foreign-Carrier Fare Data*, Brueckner and Singer, revised Feb. 2019, *available at* https://sites.socsci.uci.edu/~jkbrueck/DOT_study.pdf.
[75] *An Economic Assessment of the Effect of Eliminating the Joint Cooperation Agreement between Delta Air Lines and Aeromexico*, Bryan Keating (Feb. 23, 2024) at 5, DOT-OST-2015-0070-0258 (hereinafter referred to as "Keating").

assumes that if the at-risk routes are impacted, existing assets will be parked and not utilized elsewhere, where they would provide significant and similar economic benefits. This assumption is a fatal flaw in the paper. In an environment in which aircraft delivery timelines continue to be uncertain and all delivery slots are spoken for, and when Delta has a number of aircraft on order, it is unlikely the withdrawal of the grant of ATI will have long-term implications for Delta's fleet plan. In essence, the jobs and airplanes supporting the identified routes will not simply "evaporate"; Delta will redeploy the airplanes onto other routes in its network, thereby significantly reducing the possibility of these estimated job losses. The narrowbody fleet that Delta uses for these services may be reallocated to an additional frequency on a domestic route such as Minneapolis/St. Paul to Atlanta or Orlando, or any number of high-demand domestic routes or nearby international routes such as to the Caribbean, while airlines typically have a more difficult time finding alternative uses for widebody aircraft used in international immunized joint ventures due to demand, regulatory, slot, and network compatibility issues, among others.

The flaw extends to Keating's claims regarding the more than $310 million in U.S. GDP and $200 million in tourism that could "evaporate" should the joint venture be terminated. Keating calculates these numbers based, in part, on summing up the estimated impact of job losses associated with the cessation of Delta services on two routes, as well as on the estimated loss of visitor spending to the United States due to the loss of nonstop service on the 21 routes identified. These numbers also incorporate the loss of Delta jobs in the United States tied to a reduction in servicing Aeromexico flights to the United States.[76] The Department believes that these numbers are likely inflated due to the already mentioned issues regarding the estimates of both flight reductions and job losses, as well as the fact that these numbers incorporate estimates for several routes that were never operated.

Finally, the Department notes that a determination of whether an agreement achieves important public benefits under 49 U.S.C. § 41309(b)(1)(A) is broader than simply whether an agreement benefits one or two companies, such as Delta and Aeromexico. As the statutory language explicitly states, the analysis is whether the joint venture produces benefits to the "public." Under that analytical framework, even if Delta and Aeromexico were to lose market share due to competitors that provide better services or lower prices, that could be a net gain for consumers and the public writ large. Many significant public benefits of the Delta/Aeromexico alliance are likely to continue absent ATI as the two carriers have every economic incentive to continue non-immunized coordinated activities, such as codesharing and frequent flyer program cooperation, in order to retain their market shares. The public benefits solely attributable to ATI (*e.g.*, substantial capacity increases, especially for connecting passengers across both networks, as noted in the Department's orders and the 2016 final order granting conditional ATI in this case) have not been fully realized, as noted in Order 2025-7-12 and affirmed above. Any financial loss that Delta would experience from a lack of ATI (and not recapture through its financial investment in Aeromexico or other arms-length commercial decisions) would flow from the

---

[76] Keating at 44-45.

inability to engage in joint price and capacity setting usually prohibited by the U.S. antitrust laws. The public will clearly benefit from resumption of competition between Delta and Aeromexico, given the lack of sufficient competition to discipline a virtual merger of transborder operations due to the competition-suppressing market intervention by the GoM.

<u>More Potential Harm from the ATI Withdrawal</u>

Delta and Aeromexico claim that their ATI has enabled them to add more routes than they would otherwise be able to serve in the market, and that by removing ATI, these routes would be at risk, leading to the previously discussed "evaporation" of benefits. They claim that between "October 2023 and June 2025, on the expectation that ATI-level JCA coordination would continue indefinitely, the JCA partners launched flights in 37 new transborder markets, increased frequencies in four existing markets, and upgauged equipment in 17 markets."[77]

A closer evaluation of these claims reveals some inaccuracies when compared to publicly available OAG schedule information, suggesting that Delta and Aeromexico have a long-standing interest in serving several market pairs in the U.S.-Mexico market absent the ATI. Of the 37 "new" markets, schedule data shows that 12 are, indeed, routes that the partners had at no time served before and were inaugurated in the time period referenced (*e.g.*, Tampa-Mexico City (TPAMEX) and Raleigh Durham-Mexico City (RDUMEX)).[78] Three are markets that the partners started serving during the initial stages of their joint venture post 2017, reduced during the COVID pandemic, and restored to service during the time period referenced (*i.e.*, Atlanta-Queretaro (ATLQRO), Detroit-Queretaro (DTWQRO), and Denver-Monterrey (DENMTY)). The remaining 22 markets are ones in which Delta and/or Aeromexico had a presence at various times pre-joint venture, during the COVID pandemic, and during the referenced time period. For example, schedule data shows that at least one of the partners has served the Los Angeles-Guadalajara (LAXGDL) market continuously since at least 2010, with only small gaps of service in May of 2020 during the depths of the pandemic and for three months during 2023. Markets such as Minneapolis/St. Paul-Puerto Vallarta (MSPPVR) have been served on a seasonal basis for at least as long with no cessation of service during COVID. By relying on these claims, Delta and Aeromexico cast doubt on the severity of impacts the cessation of ATI will have on their operations in the U.S.-Mexico market.

Many of the routes that Delta and Aeromexico claim to be at risk are leisure routes such as MSPPVR, Minneapolis/St. Paul-San Jose del Cabo (MSPSJD), Cincinnati-Cancun (CVGCUN), Atlanta-Cancun (ATLCUN), Detroit-Cancun (DTWCUN) and others.[79] These are unique markets that have been operated largely by Delta (and not Aeromexico) for U.S. customers

---

[77] Objection at 15.

[78] In addition to RDUMEX and TPAMEX, these are the additional wholly-new routes: Atlanta to San Luis Potosi (ATLSLP); Atlanta to Tulum (ATLTQO); Detroit to Tulum (DTWTQO); Newark to Mexico City (EWRMEX); Orlando to Guadalajara (GDLMCO); McAllen to Mexico City (MFENLU); Miami to Guadalajara (GDLMIA); Minneapolis/St. Paul to Tulum (MSPTQO); Philadelphia to Mexico City (MEXPHL); and Phoenix to Mexico City (MEXPHX). It should be noted that Delta it is withdrawing service from DTWTQO and MSPTQO. Source: OAG Schedules.

[79] Objection at 16.

traveling on vacations. These are routes in which the vast majority of customers originate in the United States and may connect on a Delta-operated flight at the U.S. departure point to the Delta-operated flight to the Mexico "beach" destination. Upon arrival at the Mexican destination, these customers do not connect to a further Mexican destination on Aeromexico; they terminate at the "beach" destination. Delta is not reliant on assistance from Aeromexico to operate these flights because, in general, the primary customers, American citizens, have the relationship with and loyalty to Delta. Delta is not likely to end this type of flying as doing so would simply cede this traffic to competitors.

Reliance Interests

The Department is aware of the future costs, and challenges, that Delta and Aeromexico will face to wind down the joint venture. The Department acknowledges these and other reliance interests and, as discussed below, has decided to extend the wind-down period from October 25, 2025, proposed in Order 2025-7-12, to January 1, 2026, to provide a longer transition period in order to reduce disruption. The Department also notes that since 2022, it has conducted this proceeding as deliberately and patiently as possible to avoid any unnecessary impacts. However, the actual and potential harm occurring in the U.S.-Mexico market, as well as the benefits of restoring fair and open competition in accordance with our longstanding and consistent approach to Open Skies markets, outweigh the reliance interests of the joint venture partners and is more responsive to the statutory standards in Sections 41309 and 41308, which focus on the public interest. As noted above, the Department has made this assessment by balancing the costs of continued forbearance with the costs and benefits to the traveling and shipping public of acting now.

Delta and Aeromexico will continue cooperating as arms-length commercial partners, continuing many of the benefits of the joint venture. As reported by Delta, the two carriers began their first codeshare in 1994, over 30 years ago, and entered into an enhanced alliance relationship in 2011.[80] Given this longstanding partnership, which predates the 2017 implementation of the immunized joint venture by several years, Delta's 20 percent ownership stake in Aeromexico, the shared commercial interests stemming from the carriers' participation in the SkyTeam alliance, and the commercial imperative to maintain their shares in a growing international market, Delta and Aeromexico will continue to have every economic incentive to cooperate in the U.S.-Mexico market even without ATI. And even without immunity, they will still be able to provide consumer benefits through codesharing, frequent flyer program cooperation, and other joint marketing activities (activities they have engaged in for more than 30 years), which will enable them to continue to attract customers to their services. The estimates of harm the companies provide do not assume such ongoing cooperation and are, at best, inflated, especially since both carriers engaged in such cooperation prior to obtaining ATI.

---

[80] Press Release (Nov. 18, 2015), Delta Air Lines, *available at* https://ir.delta.com/news/news-details/2015/Delta-Announces-Intention-to-Acquire-Additional-Shares-of-Grupo-Aeromexico/default.aspx

29

Needing ATI to Compete

In their responses to Order 2025-7-12, Delta and Aeromexico argue that, even though Delta is one of the three largest U.S. global carriers, they need ATI to compete with United and American in the largest international market to/from the United States, while Allegiant argues that it needs ATI just to enter this market.[81]  It has not been the Department's policy to grant ATI for the purpose of enabling one carrier to compete with another carrier without also generating fundamentally new benefits that would not otherwise be possible.

The Department has encouraged airlines to establish arms-length cooperation that does not require ATI first, such that if ATI is granted, all benefits generated proximate to the grant of ATI would fit the statutory definition of "benefits otherwise not obtainable."  Only once the benefits obtainable from this arms-length cooperation have been exhausted does the Department consider ATI to align economic incentives to further integrate operations to achieve public benefits otherwise unobtainable.  In at least two applications for ATI, the Department has approved the proposed cooperation but denied ATI, given that the carriers had not sufficiently developed non-immunized cooperation to justify a grant of immunity.[82]

The 2022 Application

Delta and Aeromexico believe that the Department has not engaged with their *de novo* March 29, 2022, application for ATI, including the document production and economic analysis provided by them before the substantial distortions of competition came into focus.  The 2022 application for ongoing renewal of the joint venture will continue to be addressed in a separate proceeding.  In that proceeding, the Department suspended the procedural schedule on April 11, 2022.

When considering a *de novo* ATI application, the Department's regulations provide for a multi-step process that must be completed before that application is ripe for adjudication by the Department.[83]  This process includes, among other things, public notice, an opportunity for the public to comment on the application, and, as warranted, show cause proceedings.[84]  This process has not yet been completed, and therefore the Department will not issue a decision on the *de novo* application at this time.  However, in the interest of considering all reasonably available information in its evaluation of Delta and Aeromexico's existing ATI, the Department reviewed the pertinent information included in the *de novo* application, including the corresponding data and information and economic analysis.  Delta and Aeromexico also had an opportunity to

---

[81] Objection at 31, 44-45; and Joint Answer of Allegiant Air and Viva Aerobus (Aug. 21, 2025) at 4, DOT-OST-2015-0070-0348.

[82] Final Order,  Order 2020-3-5 (March 13, 2020), DOT-OST-2018-0084; and Final Order,  Order 2011-11-12 (Nov. 9, 2011), DOT-OST-2011-0111, in which the Department granted approval for joint venture agreements to Hawaiian and Japan Airlines in Order 2020-3-5 and to American Airlines and Qantas in Order 2011-11-12 under Section 41309 without granting ATI under Section 41308.

[83] 14 CFR Part 303, Subpart E.

[84] *See* id.

provide any additional information that they consider pertinent in their response to the Department's show-cause order in this proceeding.

Delta and Aeromexico's recently expressed concerns about the suspension of the 2022 proceeding are unavailing.[85]  The *de novo* ATI application is not currently ripe for an adjudication while, as discussed previously, Delta and Aeromexico's existing immunized joint venture is subject to continuing review under Sections 41309 and 41308.  Therefore, this order will finalize the Department's consideration of the existing immunized joint venture without taking action on the *de novo* application.

### *Reviewing Recent Information*

In rendering this decision, the Department is aware of two steps that the GoM has announced it will take.  First, the MEX airport authority has notified U.S. carriers that it will return their confiscated slots in the coming traffic seasons.[86]  This is an evolving situation and certain critical details with respect to how the process will work and what the capacity picture at MEX will look like once U.S. carriers' historical slot allocations are restored remain unanswered.  What is clear at present is that this process will require a period of several traffic seasons.  Second, on August 29, 2025, the office of Mexican President Claudia Sheinbaum published a decree amending, adding, and repealing various provisions of the national airports law.[87]  The provisions provide for the establishment of new rules for historical treatment of slots, new "use or lose" rules, and a new slot coordinator.  It is apparent from the text of the decree that further information will be required in order for Mexican civil aviation officials to interpret and implement the new rules.  Critically, the decree did not address transparency concerns with respect to capacity declarations at constrained airports in Mexico.  Transparency in setting capacity at an airport is critical for fostering competition and is in keeping with international standards.

The Department views these steps as positive and anticipates and looks forward to continuing a deliberative process of bringing Mexico into compliance with the U.S.-Mexico Air Transport Agreement and addressing all of the well-founded concerns that have been raised.  For the purposes of this ATI proceeding, the steps taken to date fall well short of addressing the competitive issues raised by the operation of an immunized joint venture in the U.S.-Mexico market.  The Department emphasized in Order 2025-7-12 that the severity of the concerns required Mexico to "establish a track record of providing certainty that the rights of new entry,

---

[85] The Department notes that there is a Motion from Delta and Aeromexico to suspend the procedural schedule for their 2022 application pending in the docket.  Motion to Suspend the Procedural Schedule (Feb. 9, 2024), DOT-OST-2015-0070-0253.  Because this Order takes no action on the 2022 application, the Department continues to defer adjudication of the pending motion.

[86] Answer of United Airlines, Inc. (Aug. 21, 2025) at 1 ("Mexican officials informed IATA, American, Delta, and United on an August 18, 2025, call that slots confiscated in the Winter 2022/2023 and Summer 2023 seasons will be reinstated"), DOT-OST-2015-0070-0346.

[87] *See* Decreto, Diaro Oficial de la Federacion (Aug. 29, 2025), *available at* https://dof.gob.mx/nota_detalle.php?codigo=5766959&fecha=29/08/2025.

competitive pricing, and a fair and equal opportunity to compete will be respected."[88] The Department sees no basis to delay or change the decision proposed in Order 2025-7-12.

### C. Conclusion

In view of the facts, circumstances, and discussion above, the Department is moving forward to end approval of the joint venture under 49 U.S.C. § 41309 (as adverse to the public interest and substantially reducing competition) and to terminate the grant of ATI used to implement that joint venture.[89] Because there will no longer be an approved agreement under Section 41309, the joint venture will no longer be eligible for ATI under 49 U.S.C. § 41308.

The Department emphasizes that our decision is limited to the statutory factors specified in these ATI statutes. It is not our view that arms-length cooperation between Delta and Aeromexico is anticompetitive. To the extent that these airlines wish to continue that cooperation following the termination of the grant of their ATI, readers should draw no inferences or conclusions about any negative competitive effects arising from those arrangements. The Department is ending approval of the package of agreements, featuring an integrated price- and capacity-setting joint venture agreement at the core, submitted for our review in 2015 and updated by the airlines since that time. The Department asked Delta and Aeromexico to comment on any transition issues of this nature and received no comments.

There is a wind down period. In Order 2025-7-12, the Department proposed that the joint venture should end October 25, 2025. Delta and Aeromexico indicated that given the practical challenges of winding down the joint venture, they request, at a minimum, an extension of the termination date through March 28, 2026. The Department recognizes the practical challenges and reliance interests. The Department agrees to extend the termination date to January 1, 2026. This provides additional time to settle accounts and prevent disruptions for customers ahead of some holiday travel and end of year business. This date strikes the appropriate balance between addressing the practical challenges and reliance interests, on the one hand, and protecting the public interest, on the other hand. Therefore, by the terms of this order, Delta and Aeromexico will not have a grant of ATI on January 1, 2026.

The Department remains focused on maintaining a level playing field. The GoM's intervention in transborder markets creates an imperative for the Department to act not only to withdraw ATI in a transborder market no longer open and contestable as provided in the U.S.-Mexico Air Transport Agreement, but to avoid distortive and competition-suppressing impacts that further discriminate against other carriers in the market, including some that may seek their own immunized joint ventures. This approach to ATI establishes parity for all market participants. The concept of parity extends to the wind down period as well. Delays in winddown and

---

[88] Order 2025-7-12 at 2.
[89] The Department also finds that Delta and Aeromexico no longer meet the standard in 49 U.S.C. § 41308, which is to say that the grant of ATI is no longer required by the public interest whether or not they engage in commercial cooperation or have an approved joint venture under Section 41309. Order 2025-7-12 at 38.

termination of the grant of ATI only compound the unfairness and actual and potential harm to other carriers and consumers.

**ACCORDINGLY:**

1. We determine that, effective January 1, 2026, the findings of Order 2016-12-13, as modified by Order 2020-12-18, are no longer valid.  Further:

   a. Under 49 U.S.C. § 41309, we end approval of the joint venture described in the application submitted by Delta Air Lines, Inc. and Aerovias de Mexico, S.A. DE C.V. on March 31, 2015, in this docket, including any modifications made since up to and including the present.  For the avoidance of doubt, we also end approval of the joint venture described in this subparagraph and find that approval is not necessary to meet a serious transportation need or to achieve important public benefits (including international comity and foreign policy considerations);

   b. Because the Department is ending approval of the joint venture under 49 U.S.C. § 41309, the Department terminates the antitrust immunity previously granted to this joint venture under 49 U.S.C. § 41308;

   Accordingly, as of 12:00 a.m. Eastern Standard Time on January 1, 2026, the joint venture between Delta Air Lines, Inc. and Aerovias de Mexico, S.A., DE C.V. will be disapproved and will cease to have a grant of antitrust immunity from the Department;

2. We reserve the right to take further or separate action as warranted by the public interest;

3. We defer action on Delta Air Lines Inc.'s February 9, 2024 Motion to Suspend the Procedural Schedule in this docket; and

4. We grant all motions for leave to file submitted to date.

By:



**SEAN P. DUFFY**
Secretary of Transportation


(Seal)


*An electronic version of this document is available online at* [www.regulations.gov](www.regulations.gov).

# EXHIBIT B

*Delta Air Lines, Inc. and Aerovías de México S.A. de C.V. v. Department of Transportation*, No. 25-____

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rules

26.1-1 through 26.1-3, Petitioner Delta Air Lines, Inc. and Petitioner Aerovías de

México S.A. de C.V. provide the following certificate of interested persons:

1. **Aerovías de México S.A. de C.V.**, Petitioner.

2. **Christine M. Buzzard**, counsel for Petitioner Delta Air Lines, Inc.

3. **Peter Carter**, Chief External Affairs Officer of Delta Air Lines, Inc.

4. **Michael P. Corcoran**, counsel for Petitioner Delta Air Lines, Inc.

5. **Gregory D. Cote**, counsel for Respondent the United States Department of Transportation.

6. **Delta Air Lines, Inc.**, Petitioner.

7. **Charles F. Donley II**, counsel for Petitioner Aerovías de México S.A. de C.V.

8. **Grupo Aeroméxico S.A.B. de C.V.**, parent company of Aerovías de México S.A. de C.V.

9. **Matthew J. MacLean**, counsel for Petitioner Aerovías de México S.A. de C.V.

10. **Edward W. Sauer**, counsel for Petitioner Aerovías de México S.A. de C.V.

11. **Eugene Scalia**, counsel for Petitioner Delta Air Lines, Inc.

12. **Steven J. Seiden**, Director – Regulatory Affairs of Delta Air Lines, Inc.

13. **Nicole Steinberg**, counsel for Petitioner Aerovías de México S.A. de C.V.

14. **Marguerite H. Taylor**, Deputy General Counsel and Chief Litigation Counsel of Delta Air Lines, Inc.

15. **Amir C. Tayrani**, counsel for Petitioner Delta Air Lines, Inc.

16. **Christopher Walker**, Director – Regulatory and International Affairs of Delta Air Lines, Inc.

17. **United States Department of Transportation**, Respondent.

The below are subsidiaries of Delta Air Lines, Inc.

Aero Assurance Ltd.
Aircraft Foreign Sales, Inc.
Cardinal Insurance Company (Cayman) Ltd.
Comair Holdings, LLC
Comair, Inc.
Comair Services, Inc.
Compass Airlines, Inc.
Crown Rooms, Inc.
DAL Global Services, LLC
DAL Moscow, Inc.
Delta AirElite Business Jets, Inc.
Delta Air Lines, Inc. and Pan American World Airways, Inc.—
Unterstutzungskasse GMBH
Delta Air Lines Dublin Limited
Delta Air Lines Private Limited
Delta Benefits Management, Inc.
Delta Connection Academy, Inc.
Delta Loyalty Management Services, LLC

*Delta Air Lines, Inc. and Aerovías de México S.A. de C.V. v. Department of Transportation*, No. 25-____

Epsilon Trading, LLC
Kappa Capital Management, LLCKappa Capital Management, LLC
MCH, Inc.
Mesaba Aviation, Inc.
MLT Inc.
Montana Enterprises, Inc.
New Sky, Ltd.
Northwest Aerospace Training Corporation
Northwest Airlines Charitable Foundation
Northwest Airlines Corporation
Northwest Airlines, Inc.
NW Red Baron LLC
NWA Fuel Services Corporation
NWA Real Estate Holding Company LLC
NWA Retail Sales Inc.
NWA Worldclub, Inc.
Tomisato Shoji Kabushiki Kaisha

The below are subsidiaries of Aerovías de México S.A. de C.V.

Administradora Especializada en Negocios, S.A. de C.V.
Aerolitoral, S.A. de C.V.
Aeromexpress, S.A. de C.V.
Aerosys, S.A. de C.V.
Aerovías Empresa De Cargo, S.A. de C.V.
AM DL MRO JV, S.A.P.I. de C.V.
Am Formación Interna, S.A. de C.V.
Centro de Capacitación Alas de América, S.A. de C.V.
Corporación Nadmin, S.A. de C.V.
Empresa de Mantenimiento Aéreo, S.A. de C.V.
Estrategias Especializadas de Negocios, S.A. de C.V.
Fundación Aeroméxico, A.C.
Inmobiliaria Avenida Fuerza Aérea Mexicana 416, S.A. de C.V.
Inmobiliaria Boulevard Aeropuerto 161, S.A. de C.V.
Inmobiliaria Grupo Aeroméxico, S.A. de C.V.
Operadora de Franquicias y Productos Aéreos, S.A. de C.V.
Sistemas Integrados de Soporte Terrestre En México, S.A. de C.V.

The below are affiliates of Aerovías de México S.A. de C.V.

Aeroméxico Cargo, S.A.P.I. de C.V.
AM BD GP JV, S.A.P.I. de C.V.
Concesionaria de Vuelos, S.A. de C.V.
Integración y Supervisión de Recursos Corporativos, S.A. de C.V.
Loyalty Servicios Profesionales Mundiales, S.A. de C.V.
Plm Premier, S.A.P.I. de C.V.
Servicios Corporativos Aeroméxico, S.A. de C.V.
T2 Servicios Aeroportuarios, S.A. de C.V.

No publicly traded company or corporation apart from those listed above has an interest in the outcome of the case.  Petitioners will file an amended certificate of interested persons should they become aware of a change in interests that would affect the disclosures as required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-4.


Dated:  October 9, 2025                              Respectfully submitted,


  */s/ Matthew J. MacLean*                       */s/ Eugene Scalia*
Matthew J. MacLean                              Eugene Scalia
Charles F. Donley II                            Amir C. Tayrani
Edward W. Sauer                                 Christine M. Buzzard
Nicole Steinberg                                Michael P. Corcoran
PILLSBURY WINTHROP SHAW PITTMAN LLP             GIBSON, DUNN & CRUTCHER LLP
1200 Seventeenth Street, N.W.                   1700 M Street, N.W.
Washington, D.C.  20036                         Washington, D.C.  20036
(202) 663-8000                                  (202) 955-8500
matthew.maclean@pillsburylaw.com                escalia@gibsondunn.com

*Counsel for Aerovías de México, S.A. de
C.V., dba Aeroméxico*

Peter Carter
Marguerite H. Taylor
DELTA AIR LINES, INC.
1030 Delta Boulevard
Atlanta, GA  30320

Steven J. Seiden
Christopher Walker
DELTA AIR LINES, INC.
601 Pennsylvania Avenue, N.W.
Suite 700
Washington, D.C.  20005

*Counsel for Delta Air Lines, Inc.*

*Delta Air Lines, Inc. and Aerovías de México S.A. de C.V. v. Department of Transportation*, No. 25-____

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the undersigned counsel for Petitioner Delta Air Lines, Inc. hereby certify that Petitioner Delta Air Lines, Inc. is a publicly held company, traded under stock ticker NYSE: DAL, with no parent company. Counsel for Petitioner Delta Air Lines, Inc. further certify that no publicly held corporation holds 10% or more of Delta Air Lines, Inc.'s stock. The Vanguard Group, Inc. owns 10% or more of Delta Air Lines Inc.'s stock.

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the undersigned counsel for Petitioner Aerovías de México S.A. de C.V. hereby certify that Petitioner Aerovías de México S.A. de C.V. is a wholly owned subsidiary of Grupo Aeroméxico, S.A.B. de C.V., a publicly held company. Counsel further certify that Delta Air Lines, Inc. and Apollo Global Management, Inc. are the only publicly held corporations that own more than 10% of Grupo Aeroméxico's capital stock.

*Delta Air Lines, Inc. and Aerovías de México S.A. de C.V. v. Department of Transportation*, No. 25-____

Dated:  October 9, 2025

Respectfully submitted,

__/s/ Matthew J. MacLean__

Matthew J. MacLean
Charles F. Donley II
Edward W. Sauer
Nicole Steinberg
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C.  20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*

__/s/ Eugene Scalia__

Eugene Scalia
Amir C. Tayrani
Christine M. Buzzard
Michael P. Corcoran
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
escalia@gibsondunn.com

Peter Carter
Marguerite H. Taylor
DELTA AIR LINES, INC.
1030 Delta Boulevard
Atlanta, GA  30320

Steven J. Seiden
Christopher Walker
DELTA AIR LINES, INC.
601 Pennsylvania Avenue, N.W.
Suite 700
Washington, D.C.  20005

*Counsel for Delta Air Lines, Inc.*