# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

No. 25-13546

DELTA AIR LINES, INC. AND AEROVÍAS DE MÉXICO, S.A. DE C.V.,

*Petitioners*,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,

*Respondent*.

Petition for Review of a Final Order of
the Department of Transportation
Order 2025-9-8; Docket DOT-OST-2015-0070

# AEROMÉXICO'S TIME-SENSITIVE
# MOTION TO STAY
# (RELIEF REQUESTED NO LATER THAN NOVEMBER 14, 2025)

Matthew J. MacLean
Charles F. Donley II
Edward W. Sauer
Nicole Steinberg
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V.,
dba Aeroméxico*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rules 26.1-1 through 26.1-3, Petitioner Delta Air Lines, Inc. and Petitioner Aerovías de México S.A. de C.V. provide the following certificate of interested persons:

1. **Aerovías de México S.A. de C.V.**, Petitioner.

2. **Christine M. Buzzard**, counsel for Petitioner Delta Air Lines, Inc.

3. **Peter Carter**, Chief External Affairs Officer of Delta Air Lines, Inc.

4. **Michael P. Corcoran**, counsel for Petitioner Delta Air Lines, Inc.

5. **Gregory D. Cote**, counsel for Respondent the United States Department of Transportation.

6. **Delta Air Lines, Inc.**, Petitioner (NYSE: DAL).

7. **Charles F. Donley II**, counsel for Petitioner Aerovías de México S.A. de C.V.

8. **Grupo Aeroméxico S.A.B. de C.V.** (AEROMEX.MX), parent company of Aerovías de México S.A. de C.V.

9. **Matthew J. MacLean**, counsel for Petitioner Aerovías de México S.A. de C.V.

10. **Steven Mintz**, counsel for Respondent the United States Department of Transportation.

11.   **Robert Nicholson**, counsel for Respondent the United States Department of Transportation.

12.   **Edward W. Sauer**, counsel for Petitioner Aerovías de México S.A. de C.V.

13.   **Eugene Scalia**, counsel for Petitioner Delta Air Lines, Inc.

14.   **Steven J. Seiden**, Director – Regulatory Affairs of Delta Air Lines, Inc.

15.   **Nicole Steinberg**, counsel for Petitioner Aerovías de México S.A. de C.V.

16.   **Marguerite H. Taylor**, Deputy General Counsel and Chief Litigation Counsel of Delta Air Lines, Inc.

17.   **Amir C. Tayrani**, counsel for Petitioner Delta Air Lines, Inc.

18.   **Christopher Walker**, Director – Regulatory and International Affairs of Delta Air Lines, Inc.

19.   **United States Department of Transportation**, Respondent.

The below are subsidiaries of Delta Air Lines, Inc.

Aero Assurance Ltd.
Aircraft Foreign Sales, Inc.
Cardinal Insurance Company (Cayman) Ltd.
Comair Holdings, LLC
Comair, Inc.
Comair Services, Inc.
Compass Airlines, Inc.
Crown Rooms, Inc.
DAL Global Services, LLC
DAL Moscow, Inc.

Delta AirElite Business Jets, Inc.
Delta Air Lines, Inc. and Pan American World Airways, Inc.—
Unterstutzungskasse GMBH
Delta Air Lines Dublin Limited
Delta Air Lines Private Limited
Delta Benefits Management, Inc.
Delta Connection Academy, Inc.
Delta Loyalty Management Services, LLC
Epsilon Trading, LLC
Kappa Capital Management, LLC
MCH, Inc.
Mesaba Aviation, Inc.
MLT Inc.
Montana Enterprises, Inc.
New Sky, Ltd.
Northwest Aerospace Training Corporation
Northwest Airlines Charitable Foundation
Northwest Airlines Corporation
Northwest Airlines, Inc.
NW Red Baron LLC
NWA Fuel Services Corporation
NWA Real Estate Holding Company LLC
NWA Retail Sales Inc.
NWA Worldclub, Inc.
Tomisato Shoji Kabushiki Kaisha

The below are subsidiaries of Aerovías de México S.A. de C.V.

Administradora Especializada en Negocios, S.A. de C.V.
Aerolitoral, S.A. de C.V.
Aeromexpress, S.A. de C.V.
Aerosys, S.A. de C.V.
Aerovías Empresa De Cargo, S.A. de C.V.
AM DL MRO JV, S.A.P.I. de C.V.
Am Formación Interna, S.A. de C.V.
Centro de Capacitación Alas de América, S.A. de C.V.
Corporación Nadmin, S.A. de C.V.
Empresa de Mantenimiento Aéreo, S.A. de C.V.
Estrategias Especializadas de Negocios, S.A. de C.V.
Fundación Aeroméxico, A.C.

Inmobiliaria Avenida Fuerza Aérea Mexicana 416, S.A. de C.V.
Inmobiliaria Boulevard Aeropuerto 161, S.A. de C.V.
Inmobiliaria Grupo Aeroméxico, S.A. de C.V.
Operadora de Franquicias y Productos Aéreos, S.A. de C.V.
Sistemas Integrados de Soporte Terrestre En México, S.A. de C.V.

The below are affiliates of Aerovías de México S.A. de C.V.

Aeroméxico Cargo, S.A.P.I. de C.V.
AM BD GP JV, S.A.P.I. de C.V.
Concesionaria de Vuelos, S.A. de C.V.
Integración y Supervisión de Recursos Corporativos, S.A. de C.V.
Loyalty Servicios Profesionales Mundiales, S.A. de C.V.
Plm Premier, S.A.P.I. de C.V.
Servicios Corporativos Aeroméxico, S.A. de C.V.
T2 Servicios Aeroportuarios, S.A. de C.V.

No publicly traded company or corporation apart from those listed above has an interest in the outcome of the case. Petitioners will file an amended certificate of interested persons should they become aware of a change in interests that would affect the disclosures as required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-4.

Dated: October 24, 2025

Respectfully submitted,

By: _/s/ Matthew J. MacLean_

Matthew J. MacLean
Charles F. Donley II
Edward W. Sauer
Nicole Steinberg
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

_Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico_

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the undersigned counsel for Petitioner Aerovías de México S.A. de C.V. hereby certify that Petitioner Aerovías de México S.A. de C.V. is a wholly owned subsidiary of Grupo Aeroméxico, S.A.B. de C.V., a publicly held company. Counsel further certify that Delta Air Lines, Inc. and Apollo Global Management, Inc. are the only publicly held corporations that own more than 10% of Grupo Aeroméxico's capital stock.

Dated: October 24, 2025                Respectfully submitted,

By: */s/ Matthew J. MacLean*

Matthew J. MacLean
Charles F. Donley II
Edward W. Sauer
Nicole Steinberg
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

BACKGROUND ...................................................................................4

STANDARD OF REVIEW ....................................................................6

ARGUMENT .........................................................................................7

    I.    Aeroméxico is Likely to Succeed on the Merits of Its Claim that the Order is Arbitrary and Capricious...............................................................7

          A.    The Department Failed to Demonstrate that the Joint Venture Substantially Reduces Competition. ...................................................10

          B.    The Department Imposed an Extra-Statutory Prerequisite to End the Joint Venture. ..........................................................................11

          C.    The Department Contradicts Itself and Applies Inconsistent Reasoning. ......................................................................................13

    II.    Aeroméxico Faces Immediate and Irreparable Harm. ................................15

    III.  The Balance of Harms and the Public Interest Warrant Relief. .................19

    IV.  Aeroméxico Requests a Ruling on this Motion by November 14, 2025...................................................................................................21

CONCLUSION....................................................................................21

CERTIFICATE OF COMPLIANCE......................................................23

CERTIFICATE OF ELECTRONIC SUBMISSION...............................24

CERTIFICATE OF SERVICE ..............................................................25

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*ABC Aerolineas, S.A. de C.V. v. U.S. Dep't of Transp.*,
    747 F. App'x 865 (D.C. Cir. 2018)................................................................7, 8

*Am. Sec. Ass'n, Citadel Sec. LLC v. SEC*,
    147 F.4th 1264 (11th Cir. 2025) ...................................................................8, 13

*Bayou Lawn & Landscape Servs. v. Sec'y of Lab.*,
    713 F.3d 1080 (11th Cir. 2013) ...................................................................15, 17

*Civ. Aeronautics Bd. v. Delta Air Lines, Inc.*,
    367 U.S. 316 (1961)......................................................................................12, 13

*Ferrero v. Associated Materials, Inc.*,
    923 F.2d 1441 (11th Cir. 1991) ...................................................................16, 17

*Friends of the Everglades, Inc. v. Sec'y of Homeland Sec.*,
    No. 25-12873, 2025 WL 2598567 (11th Cir. Sep. 4, 2025)................................6

*Georgia v. Biden*,
    46 F.4th 1283 (11th Cir. 2022) ...........................................................................16

*Gray Television, Inc. v. FCC*,
    130 F.4th 1201 (11th Cir. 2025) ...........................................................................8

*In re Gateway Radiology Consultants, P.A.*,
    983 F.3d 1239 (11th Cir. 2020) .............................................................................8

*Interstate Nat. Gas Ass'n of Am. v. Pipeline & Hazardous Materials Safety Admin.*,
    114 F.4th 744 (D.C. Cir. 2024)...........................................................................13

*Iowa Utils. Bd. v. FCC*,
    109 F.3d 418 (8th Cir.1996) ...............................................................................16

*LabMD, Inc. v. FTC*,
    678 F. App'x 816 (11th Cir. 2016) .......................................................................6

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*,
    32 F.4th 1363 (11th Cir. 2022) .............................................................................6

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ............................................................................ 12

*Merrill v. Milligan*,
    142 S. Ct. 879 (2022) (Kavanaugh, J., concurring in grant of stays) ................. 20

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ........................................................................ 8, 12

*Nat'l Broad. Co. v. United States*,
    319 U.S. 190 (1943) ............................................................................ 12

*Nat'l Religious Broad. v. FCC*,
    138 F.4th 282 (5th Cir. 2025) ............................................................ 12

*Nken v. Holder*,
    556 U.S. 418 (2009) .............................................................................. 6

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*,
    715 F.3d 1268 (11th Cir. 2013) .................................................... 15, 16

*Ohio v. EPA*,
    603 U.S. 279 (2024) .............................................................................. 6

*Stone & Webster Constr., Inc. v. U.S. Dep't of Lab.*,
    684 F.3d 1127 (11th Cir. 2012) ............................................................ 7

*United States v. Seatrain Lines, Inc.*,
    329 U.S. 424 (1947) ............................................................................ 13

## Statutes and Codes

United States Code
    Title 5, Section 706(2) ...................................................................... 7
    Title 49, Section 40101 .................................................................. 3, 8

    Title 49, Section 41308(c) ................................................................ 4
    Title 49, Section 41309 ..............................................................*passim*

    Title 49, Section 46110 .................................................................... 3

<u>Rules and Regulations</u>

Federal Rules of Appellate Procedure
    Rule 18 ............................................................................................................1, 3

## INTRODUCTION

Before this Court is a challenge to a final order of the U.S. Department of Transportation (the "Department") issued on September 15, 2025, which terminates the Department's approval of the joint venture agreement ("Joint Venture") between petitioners Delta Air Lines, Inc. ("Delta") and Aerovías de México, S.A. de C.V. ("Aeroméxico," and, together with Delta, "Petitioners") and associated grant of antitrust immunity ("ATI") effective January 1, 2026 (Order 2025-9-8, the "Order").

Aeroméxico moves pursuant to Fed. R. App. P. 18(a)(2) for a stay of the Order pending the resolution of Petitioners' challenge. Unless stayed, the Order will require Aeroméxico and Delta to unravel a nearly nine-year-long Joint Venture in less than three months. This would require Aeroméxico to, for example, divert existing and hire new staff, establish a new brand presence in the U.S., separate its information technology platforms for U.S. pricing and sales from Delta's, and ███████████████████████████ — all over the extremely busy holiday travel season. Then, if the Court ultimately vacates the Order as Petitioners request, Aeroméxico and Delta would have to reverse course again and undertake a years-long process of reestablishing the Joint Venture's operational infrastructure.

Not only would Aeroméxico and Delta suffer concrete, calculable harm from such an upheaval to their brand and operations, but Aeroméxico and Delta cannot

recover *any* monetary damages from the Department. On the other hand, a stay would only maintain the status quo in the U.S.-Mexico passenger market that the public has benefitted from for almost a decade. Given the Department waited eighteen months to take action on its initial proposal to terminate the Joint Venture, it stands to reason that the Order need not take effect until after the Court has assessed its validity.

Further, given the multitude of defects in the Order, Aeroméxico and Delta are likely to succeed on their claim that the Order is arbitrary and capricious. Despite its conclusion that the Joint Venture is adverse to the public interest and negatively impacts competition, the Department's decision fell short of the Administrative Procedure Act's requirements for reasoned decisionmaking and did not focus its analysis on the impact of the Joint Venture itself in the broad U.S.-Mexico market. Instead, the Order analyzed purportedly anticompetitive actions of the Government of Mexico at a single airport, implicating the Joint Venture as a byproduct and only by a chain of speculation.

In short, the Department's reasoning is as follows: Because it believes the Government of Mexico's actions "distort" competition, the Joint Venture must benefit from these distortions to the detriment of its competitors. But the Department fails to articulate any evidence that the Joint Venture actually causes competitive harm, and then it penalizes the Joint Venture for supposedly *not* performing as well

as expected against its competitors. As Aeroméxico and Delta will demonstrate, the Order is unsupported, internally inconsistent, and arbitrary, and Aeroméxico and Delta should not be forced to pay the price for the Department's disregard of its statutory mandate.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 49 U.S.C. § 46110, which permits persons with a substantial interest in an order issued by the Department under the Federal Aviation Act of 1958 (49 U.S.C. 40101 *et seq.*) (the "FAA") to petition for review in an applicable Court of Appeals within 60 days of the order's issuance. The Department issued the Order under the FAA on September 15, 2025.   Petitioners filed a timely petition for review with this Court on October 9, 2025. *See* ECF No. 1. Aeroméxico has a substantial interest in the Order, as it terminates approval of and the grant of ATI for the Joint Venture between Delta and Aeroméxico. *See* Exhibit A, Declaration of Ernesto Gomez Pombo.

Pursuant to Fed. R. App. P. 18(a)(1), on October 10, 2025, Aeroméxico requested that the Department grant a stay. The Department requested a delay until October 24, 2025, to respond. Today, the Department denied Aeroméxico's motion.

## BACKGROUND

Congress has expressed a policy in favor of "integrating domestic and international air transportation" and improving "opportunities for carriers of foreign countries to increase their access to places in the United States." 49 U.S.C. § 40101(e)(6) and (8). Consistent with these policy considerations and others, Congress has mandated that "[t]he Secretary of Transportation *shall approve* an agreement" between U.S. and foreign air carriers when it is not adverse to the public interest and not otherwise in violation of the statute. 49 U.S.C. § 41309(b) (emphasis added). Congress has further mandated that, in the order granting approval, the Department "shall exempt" the parties to the agreement from antitrust laws to the extent necessary to effectuate the order. 49 U.S.C. § 41308(c).

On March 31, 2015, Delta and Aeroméxico applied for approval of a joint venture to provide nonstop flights between the United States and Mexico and "flights within the [United States] and Mexico that connect to transborder service." DOT-OST-2015-0070, at 7 (Mar. 31, 2015). On December 14, 2016, the Department approved the Joint Venture, concluding that it would generate "significant public benefits" and would "not substantially reduce or eliminate competition in the U.S.-Mexico market." Order 2016-11-2 at 11, 13, 18. Importantly, the Joint Venture would establish a viable competitor to American Airlines and United Airlines, the

then-predominant players in the U.S.-Mexico market with a combined seat share of 43%.

Since its inception, the Joint Venture has realized such public benefits: Aeroméxico and Delta have launched or expanded more than three dozen U.S.-Mexico routes, increased overall transborder capacity by 22%, and transported over 56 million passengers. Today, out of more than 10 competitors in the U.S.-Mexico market, American Airlines holds a 21% seat share, United Airlines holds 16%, and Volaris holds 16%. The Joint Venture comes in second with 20%, and the remaining 27% is shared across various carriers, including Alaska Airlines, Southwest Airlines, and Viva Aerobus.

Despite these public benefits, on January 26, 2024, the Department issued an Order to Show Cause (Order 2024-01-17) announcing its tentative decision to terminate approval of the Joint Venture based on concerns regarding the Government of Mexico's actions at Benito Juárez Airport in Mexico City ("MEX"), in alleged violation of the Air Transport Agreement between the U.S. and Mexico (the "Open Skies Agreement").

Eighteen months after Aeroméxico and Delta filed their objections, on July 19, 2025, the Department issued a Supplemental Order to Show Cause (Order 2025-7-12, the "Supp. SCO"), proposing to end approval of the Joint Venture based on the same concerns about the Government of Mexico's actions at MEX. Aeroméxico

and Delta objected again on August 11, 2025, submitting extensive record evidence and expert economic analysis demonstrating that the Joint Venture benefits the public and market competition. *See* Docket DOT-OST-2015-0070. Despite this, on September 15, 2025, the Department issued the Order, terminating approval of the Joint Venture and ATI, effective January 1, 2026.

## STANDARD OF REVIEW

A stay turns on four considerations: "(1) whether the applicant is likely to succeed on the merits, (2) whether it will suffer irreparable injury without a stay, (3) whether the stay will substantially injure the other parties interested in the proceedings, and (4) where the public interest lies." *Ohio v. EPA*, 603 U.S. 279, 291 (2024) (citation omitted). "Where the government is the party opposing the preliminary injunction, the balance of the equities and the public interest 'merge.'" *Friends of the Everglades, Inc. v. Sec'y of Homeland Sec.*, No. 25-12873, 2025 WL 2598567, at *10 (11th Cir. Sep. 4, 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

When "the balance of equities weighs heavily in favor of granting the stay," this Court will "relax the likely-to-succeed-on-the-merits requirement" and grant a stay "upon a lesser showing of a 'substantial case on the merits.'" *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (cleaned up). Put differently, a stay preserving "the status quo" is warranted when

"a serious legal question is presented" and "little if any harm will befall other interested persons or the public." *LabMD, Inc. v. FTC*, 678 F. App'x 816, 819 (11th Cir. 2016) (citations omitted).

Here, Aeroméxico and Delta are highly likely to succeed on the merits of their challenge to the Order and will suffer substantial irreparable harm if a stay is not granted. Meanwhile, no demonstrable harm will flow to the public from a stay. Aeroméxico and Delta therefore easily satisfy either formulation of the stay standard.

## ARGUMENT

Aeroméxico is likely to succeed on the merits because the Order is unsupported, inconsistent, and arbitrary under the plain text of 49 U.S.C. § 41309. Further, the Order will immediately and irreparably harm Aeroméxico and its customers if Aeroméxico is required to unwind its highly interconnected operations with Delta—and then reestablish that complex infrastructure if the Court ultimately vacates the Order.  Accordingly, the Court should stay the Order and preserve the status quo during judicial review.

## I.    Aeroméxico is Likely to Succeed on the Merits of Its Claim that the Order is Arbitrary and Capricious.

Under the Administrative Procedure Act ("APA"), this Court must "set aside" agency actions found to be "in excess of statutory jurisdiction, authority, or limitations," or "arbitrary, capricious, … or otherwise not in accordance with law."

5 U.S.C. § 706(2). It reviews an agency's legal conclusions de novo. *Stone & Webster Constr., Inc. v. U.S. Dep't of Lab.*, 684 F.3d 1127, 1132 (11th Cir. 2012). Agency action is arbitrary and capricious if the agency has not "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *ABC Aerolineas, S.A. de C.V. v. U.S. Dep't of Transp.*, 747 F. App'x 865, 870 (D.C. Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted)). An agency decision must be "reasonable and reasonably explained," and judicial review is "not a rubber stamp – 'courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking.'" *Gray Television, Inc. v. FCC*, 130 F.4th 1201, 1212, 1214-15 (11th Cir. 2025) (quoting *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1263 (11th Cir. 2020)) (citation omitted).

Here, the "reasoned decisionmaking" the Department is charged with is outlined in 49 U.S.C. § 41309. When determining whether to revoke an existing cooperative agreement, the Department must conduct a "competitive effects analysis." Order at 8. The Department must determine whether "*the agreement*" is "adverse to the public interest" (49 U.S.C. § 41309(b) (emphasis added)), based on a list of public-interest considerations set forth in 49 U.S.C. § 40101. The Department must also determine whether the agreement "substantially reduces or

eliminates competition." 49 U.S.C. § 41309(b)(1). Where, as here, agency action depends upon a finding of economic effect, a "decision not to conduct a new economic analysis or revise its previous economic analysis … violates the Administrative Procedure Act." *Am. Sec. Ass'n, Citadel Sec. LLC v. SEC*, 147 F.4th 1264, 1278 (11th Cir. 2025) (citation omitted).

In the Order, the Department's application of the statutory standard is defective, rendering it arbitrary and capricious. *First,* despite Congress's express directive to analyze the competitive impacts of the Joint Venture *agreement*, the Department neither analyzed nor demonstrated how the Joint Venture itself negatively impacts the public interest and market competition. Instead, the Department analyzed the Government of Mexico's purported violations of the Open Skies Agreement at one airport, MEX, and concluded, without support, that the Joint Venture *could* unfairly benefit from such policies. *Second,* in doing so, the Department applied a threshold requirement to the Joint Venture that is not found in the statute. *Third,* the Department's reasoning is inconsistent and contradictory because it failed to define the relevant market to measure the Joint Venture against and, as a result, reached the contradictory conclusion that the Joint Venture is both dominating and being outperformed by its peers.

Accordingly, Aeroméxico's challenge to the Order is likely to succeed and a stay is warranted.

A.    **The Department Failed to Demonstrate that the Joint Venture Substantially Reduces Competition.**

The Department failed both to complete the required analysis and to make the required findings under 49 U.S.C. § 41309 to disapprove the Joint Venture. The Department arbitrarily terminated approval of the Joint Venture without analyzing or demonstrating how the Joint Venture itself, rather than actions by the Government of Mexico, directly reduces competition.

In the Order, the Department cataloged the Government of Mexico's alleged violations of the Open Skies Agreement (Order at 9-10) and characterized the effects of such violations as a "change in market conditions" (*id.* at 9-10, 18). The Department's "factual assessment" ends there: while it claimed to have considered "the materiality of the change in market conditions on the operations of the [J]oint [V]enture," (*id.* at 18), this is nowhere to be found in the Order. The Department found that "the anticompetitive and distortive actions by the [Government of Mexico] … are *alone* sufficient to support a conclusion under the statute that there is a substantial reduction of competition …." *Id.* at 11 (emphasis added). But this finding, even if true, cannot support concluding that the *Joint Venture* substantially reduces or eliminates competition.

Instead, the Department merely speculated that in light of actions by the Government of Mexico that the Department deems anticompetitive, the Joint Venture's share at MEX creates the "*possibility*" for various anticompetitive effects,

- 10 -

and those "possible" anticompetitive effects are "evident" in "*potentially*" all U.S.-MEX markets that are "actually *or potentially* served by Delta and Aeroméxico …." *Id.* at 11-12. It therefore found that the Joint Venture "exacerbates competitive *concerns* …." allegedly caused by the Government of Mexico. *Id.* (emphasis added).

Summed up, the Department's support for terminating the Joint Agreement is a chain of speculation: because the Government of Mexico's actions have allegedly led to "inadequate competition in the market" (*id.* at 2), the Joint Venture automatically benefits from such inadequate competition, and the Joint Venture "*could* exacerbate the distortive effects" of such policies (*id.* at 16).

These kinds of vague and noncommittal assertions are difficult to refute. Anything is "possible." But for the same reason, they are insufficient to support reasoned agency action.

**B.    The Department Imposed an Extra-Statutory Prerequisite to End the Joint Venture.**

Instead of analyzing whether the Joint Venture itself is "adverse to the public interest" or "substantially reduces competition," the Department analyzed the Government of Mexico's compliance with the Open Skies Agreement, concluded that the Government of Mexico's actions are "alone sufficient" to show "a substantial reduction in competition," and rested its decision on "downline" effects that may or may not occur. Order at 11.

In doing so, the Department invented an extra-statutory threshold requirement for approval of the Joint Venture, and admits as much in the Order:

> As defined by the Department, an Open Skies agreement provides for, among other things, open entry, market-based pricing, and open route rights. *If* these essential competitive-enabling elements are present in law and in practice, *the Department can reliably evaluate* the structural impact of the proposed joint venture and its likely effects on consumers and the overall public interest.

*Id.* at 17 (emphases added). This is not the analysis or the authority the Department is charged with, rendering the Order arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 ("an agency rule would be arbitrary and capricious if," among other things, "the agency has relied on factors which Congress has not intended it to consider"). For one thing, 49 U.S.C. § 41309 was enacted *before* the concept of Open Skies existed.

Thus, the Department's competition analysis was anything but.  The Department instead myopically focused on only one aspect of the competition problem, ignoring myriad other issues and facts.  And although the Department is empowered to consider the broader "public interest," this inquiry is not boundless. *See Nat'l Religious Broad. v. FCC*, 138 F.4th 282, 291 (5th Cir. 2025) ("Public-interest authority, though cast in broad terms, is not 'unlimited.'") (quoting *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 216 (1943)); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is

- 12 -

ambiguous"). While the presence of Open Skies in a particular market, including foreign government policies bearing on Open Skies, may be relevant to the Department's analysis, it does not alone support the analysis or the findings required by the statute.

Agencies cannot substitute their own preferred procedures for those Congress has prescribed. *See, e.g.*, *Civ. Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 333-334 (1961) (agencies "must follow the procedures 'specifically authorized' by Congress and cannot rely on their own notions of implied powers"); *United States v. Seatrain Lines, Inc.*, 329 U.S. 424, 432–33 (1947) (agencies may act only via those procedures "specifically authorized by Congress").

The Department cannot replace the statutorily required holistic analysis with the binary and inherently subjective question of whether Open Skies exist in a given country. Its decision to do so is arbitrary and capricious.

### C.    The Department Contradicts Itself and Applies Inconsistent Reasoning.

What reasoning the Department did apply to the Joint Venture is contradictory and inconsistent. Because the APA requires agencies to provide a reasoned explanation for their decisions, any explanation that "contradicts itself" or is otherwise "internally inconsistent" is arbitrary and capricious. *Interstate Nat. Gas Ass'n of Am. v. Pipeline & Hazardous Materials Safety Admin.*, 114 F.4th 744, 755

(D.C. Cir. 2024); *Am. Sec. Ass'n*, 147 F.4th at 1274 ("internally inconsistent" order violates the APA).

*First*, the Department failed to define the relevant market, instead oscillating between the narrow "U.S.-MEX" market and the broader "U.S.-Mexico" transborder market, depending on its argument. For example, the Department found that the Joint Venture creates "the *possibility* for anticompetitive and efficiency-reducing outcomes" due to its "predominant share" of the U.S.-MEX market. Order at 11 (emphasis added). However, the relevant market the Joint Venture covers is the broader U.S.-Mexico market, in which the Joint Venture holds only 20% of seat shares, compared with 21% for American and 16% for both Volaris and United. In contrast, although the Joint Venture recorded "growth in the U.S.-MEX market" (Supp. SCO at 36), when taking issue with the Joint Venture's supposedly "substandard" growth, the Department looked at the larger U.S.-Mexico market. *Id.* at 23.  The Department haphazardly expanded and contracted the market to defend its flawed conclusions. That is textbook arbitrary and capricious decisionmaking.

*Second*, the Department faulted the Joint Venture for "substandard growth" relative to its peers, while it also claimed the Joint Venture is simultaneously dominating those same peers. *Id.* The two realities cannot coexist: if the Joint Venture is being outperformed by its competitors, it cannot also be preventing competitors from entering the market by exploiting the Government of Mexico's

allegedly anticompetitive policies. Although Aeroméxico disputes that the Joint Venture's growth was below expectations, a more logical conclusion of the Department's (flawed) growth analysis is that the Joint Venture does *not* benefit from an unfair, anticompetitive advantage and does *not* "substantially reduce" competition.

Accordingly, the Order is fatally inconsistent, and Aeroméxico is likely to succeed on the merits of its arbitrary and capricious claim.

## II.    Aeroméxico Faces Immediate and Irreparable Harm.

Aeroméxico faces imminent, unrecoverable harms in the form of compliance and restructuring costs; losses of goodwill, customers, and corporate contracts; and structural harms from potential slot-season and network-planning losses. Each independently suffices as irreparable harm under the law of this circuit. *See Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013); *Bayou Lawn & Landscape Servs. v. Sec'y of Lab.*, 713 F.3d 1080, 1085 (11th Cir. 2013).

The scope of Aeroméxico's operations under the Joint Venture is significant. Since the Joint Venture became effective in 2017, Aeroméxico has transported approximately 58 million passengers and operated approximately 454,000 flights covering around 630 million miles between Mexico and the United States. Between September 2024 and August 2025, ██████████████████████████

████████████████████████████████████████

███████████████████████. Practically every facet of this operation will be affected if the Joint Venture must be dismantled. The transition cannot be accomplished without incurring substantial, unrecoverable costs and business disruption, nor could the Joint Venture be readily restored in its prior form if Aeroméxico and Delta's petition for review is ultimately successful.

"[T]he inability to recover monetary damages because of sovereign immunity"—which the Department of Transportation enjoys—renders any monetary loss "irreparable." *Odebrecht*, 715 F.3d at 1289 ("The threat of unrecoverable economic loss ... qualif[ies] as irreparable harm") (quoting *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir.1996)) (alterations in original) (citation omitted); *accord Georgia v. Biden*, 46 F.4th 1283, 1302 (11th Cir. 2022) ("[U]nrecoverable monetary loss is an irreparable harm.") (citation omitted).

Delta currently provides the Joint Venture's pricing, marketing, and joint branding functions within the United States upon which Aeroméxico relies. If the Joint Venture is terminated, Aeroméxico will be required to establish duplicate pricing and marketing functions, including hiring personnel to fill approximately two dozen additional positions, two-thirds of which would be in Mexico, and renegotiating software-as-a-service agreements, ████████████████████

███████████████████████. These expenditures will be unrecoverable, even if the

- 16 -

Joint Venture were to be later reinstated. The need for rapid action and training will delay the release of new products, ███████████████████████ ████████████████████, and will complicate long-term product development and customer engagement strategies.

Loss of goodwill and long-standing customer relationships also constitutes irreparable harm. *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) ("[L]oss of customers and goodwill is an 'irreparable' injury.") (citation omitted); *Bayou*, 713 F.3d at 1085 ("[T]he new rules would have an immediate and significant impact on [the petitioners], resulting in lost revenue, customers, and/or goodwill. ... We have held that these facts support a finding of irreparable injury.") (citation omitted).

Joint Venture products offered in the U.S. market, such as Delta Vacations, are currently marketed under Delta's brand. Aeroméxico will be required to develop, reintroduce, and market its own-branded products in the United States, with the attendant risk of customer confusion and reduced brand recognition. Relatedly, because Aeroméxico has relied on Delta for pricing within the United States, Aeroméxico will need to develop, test, and deploy new passenger and cargo pricing models without the benefit of recent U.S. market data and experience.

Through the Joint Venture, Aeroméxico and Delta are joint parties to ████████████████████████████████████████████



████████████████████████████ Those agreements will have to be reviewed individually and potentially renegotiated on different and less favorable terms, resulting in substantial administrative burden and ████████████ ████████████ Likewise, Aeroméxico and Delta are also joint parties ████████████████████████ ████████████████████████ These agreements will have to be reviewed individually and potentially renegotiated on less favorable terms, ████████ ████████████████

In addition, the future is unpredictable in connection with marketing and re-branding success, pricing, and potential renegotiation of agency and corporate agreements, which could affect the viability of existing Aeroméxico routes. Routes that are particularly reliant on the availability of Delta connections and feed traffic—████████████████████████—are especially at risk if the Joint Venture is unwound.

Additionally, Aeroméxico currently utilizes Delta slots at John F. Kennedy International Airport in New York, which is slot-constrained, and Delta gate access at Seattle-Tacoma International Airport. Termination of the Joint Venture creates

uncertainty about Aeroméxico's continued access to Delta's facilities and may require negotiating separate agreements directly with the airports.

The Department itself recognized Aeroméxico's reliance interests and the risk of customer disruption in extending the termination date, confirming that an abrupt unwind over the holiday peak season would be destabilizing—precisely the harm a stay avoids. Order at 29.

Of course, if the Joint Venture is reinstated after review, Aeroméxico will face many of the same costs and uncertainties—including right-sizing staffing levels, re-combining its brand with Delta's in the U.S. market, and renegotiating agency and corporate agreements—as it is now facing in connection with the Joint Venture's dismantlement.

In sum, termination of the Joint Venture ██████████████████████████ ████████████████████, risk disruption of ██████████████████████ ██████, and risk permanent damage to hard-earned goodwill with customers and business partners. These harms are imminent and cannot be remedied by monetary damages or reversed if the Order is later vacated.

## III.    The Balance of Harms and the Public Interest Warrant Relief.

The equities favor maintaining the status quo while this Court considers Petitioners' challenge. Aeroméxico faces immediate and unrecoverable harm if forced to dismantle the Joint Venture on an accelerated timetable, with the

possibility of having to reassemble it again at the conclusion of this case, whereas a stay would impose no demonstrable injury on the Department or the public. The public interest, moreover, favors continuity of air service, regulatory consistency, and reasoned judicial review—not sudden, disruptive change.

Aeroméxico and Delta have operated the Joint Venture for nearly nine years with the Department's express approval. The alliance has become an established part of the competitive landscape, facilitating seamless travel between the United States and Mexico, expanding consumer choice, and enabling service to markets that neither carrier could sustain alone. The Order would upend this settled framework on less than four months' notice and during the winter peak travel season. Without a stay, Aeroméxico must begin unwinding the Joint Venture now: separating information-technology systems, duplicating pricing and marketing functions, ███████████████████████, and revising thousands of tickets already sold for travel after January 1. Each of those steps entails unrecoverable costs and consumer confusion that cannot later be undone if the Order is vacated.

A stay, in contrast, would do no harm. It would "allow this Court to decide the merits in an orderly fashion—after full briefing, oral argument, and … internal deliberations"—rather than in an "emergency" posture by, say, expediting resolution of this case to reach a decision by January 1, 2026, when the Order will otherwise become effective. *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J.,

concurring in grant of stays). If the Court ultimately sustains the Department's action, the Joint Venture can then be wound down in an orderly, deliberate manner. If the Court vacates the Order, the stay will have avoided needless disruption to travelers and the marketplace.

**IV.  Aeroméxico Requests a Ruling on this Motion by November 14, 2025.**

The pending deadline of January 1, 2026, has forced Aeroméxico already to expend significant resources in preparation for a rapid dismantlement of the Joint Venture. Those efforts and expenses will increase quickly as the deadline approaches. Meanwhile, strategic plans are being placed on hold in the face of uncertainty as to what a post-Joint Venture future will look like. To allow Aeroméxico to return to a sense of order and clear-sightedness about the future and to provide certainty to the traveling public, Aeroméxico requests this Court to rule on its motion by **November 14, 2025**.

**CONCLUSION**

For the foregoing reasons, Aeroméxico requests that the Court stay the Order pending full review of the merits of the Petition for Review.

Dated: October 24, 2025           Respectfully submitted,

By: */s/ Matthew J. MacLean*

Matthew J. MacLean
Charles F. Donley II
Edward W. Sauer
Nicole Steinberg
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that the foregoing motion complies with the type-volume limitations in Fed. R. App. P. 27(d)(2)(A). According to the word count feature of Microsoft Word, the motion contains 4604 words, excluding the parts exempted under Fed. R. App. P. 32(f). This motion has been prepared in 14-point Times New Roman font.

Dated: October 24, 2025          Respectfully submitted,

By: _/s/ Matthew J. MacLean_

Matthew J. MacLean
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*

- 23 -

## CERTIFICATE OF ELECTRONIC SUBMISSION

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: October 24, 2025          Respectfully submitted,

By: */s/ Matthew J. MacLean*

Matthew J. MacLean
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*

## CERTIFICATE OF SERVICE

I certify that on October 24, 2025, the foregoing Motion to Stay was electronically filed with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will send a notice of filing to all registered users.


Respectfully submitted,

By: */s/ Matthew J. MacLean*

Matthew J. MacLean
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*