# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

No. 25-13546

DELTA AIR LINES, INC. AND AEROVÍAS DE MÉXICO, S.A. DE C.V.,

*Petitioners*,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,

*Respondent*.

Petition for Review of a Final Order of
the Department of Transportation
Order 2025-9-8; Docket DOT-OST-2015-0070

**AEROMÉXICO'S REPLY IN SUPPORT OF ITS
TIME-SENSITIVE MOTION TO STAY
(RELIEF REQUESTED NO LATER THAN NOVEMBER 14, 2025)**

Matthew J. MacLean
Charles F. Donley II
Edward W. Sauer
Nicole Steinberg
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V.,
dba Aeroméxico*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rules 26.1-1 through 26.1-3, Petitioner Delta Air Lines, Inc. and Petitioner Aerovías de México S.A. de C.V. provide the following certificate of interested persons:

1. **Aerovías de México S.A. de C.V.**, Petitioner.

2. **Christine M. Buzzard**, counsel for Petitioner Delta Air Lines, Inc.

3. **Peter Carter**, Chief External Affairs Officer of Delta Air Lines, Inc.

4. **Michael P. Corcoran**, counsel for Petitioner Delta Air Lines, Inc.

5. **Gregory D. Cote**, counsel for Respondent the United States Department of Transportation.

6. **Delta Air Lines, Inc.**, Petitioner (NYSE: DAL).

7. **Charles F. Donley II**, counsel for Petitioner Aerovías de México S.A. de C.V.

8. **Grupo Aeroméxico S.A.B. de C.V.** (AEROMEX.MX), parent company of Aerovías de México S.A. de C.V.

9. **Matthew J. MacLean**, counsel for Petitioner Aerovías de México S.A. de C.V.

10. **Steven Mintz**, counsel for Respondent the United States Department of Transportation.

11. **Robert Nicholson**, counsel for Respondent the United States Department of Transportation.

12. **Edward W. Sauer**, counsel for Petitioner Aerovías de México S.A. de C.V.

13. **Eugene Scalia**, counsel for Petitioner Delta Air Lines, Inc.

14. **Steven J. Seiden**, Director – Regulatory Affairs of Delta Air Lines, Inc.

15. **Nicole Steinberg**, counsel for Petitioner Aerovías de México S.A. de C.V.

16. **Marguerite H. Taylor**, Deputy General Counsel and Chief Litigation Counsel of Delta Air Lines, Inc.

17. **Amir C. Tayrani**, counsel for Petitioner Delta Air Lines, Inc.

18. **Christopher Walker**, Director – Regulatory and International Affairs of Delta Air Lines, Inc.

19. **United States Department of Transportation**, Respondent.

The below are subsidiaries of Delta Air Lines, Inc.

Aero Assurance Ltd.
Aircraft Foreign Sales, Inc.
Cardinal Insurance Company (Cayman) Ltd.
Comair Holdings, LLC
Comair, Inc.
Comair Services, Inc.
Compass Airlines, Inc.
Crown Rooms, Inc.
DAL Global Services, LLC
DAL Moscow, Inc.

Delta AirElite Business Jets, Inc.
Delta Air Lines, Inc. and Pan American World Airways, Inc.—
Unterstutzungskasse GMBH
Delta Air Lines Dublin Limited
Delta Air Lines Private Limited
Delta Benefits Management, Inc.
Delta Connection Academy, Inc.
Delta Loyalty Management Services, LLC
Epsilon Trading, LLC
Kappa Capital Management, LLC
MCH, Inc.
Mesaba Aviation, Inc.
MLT Inc.
Montana Enterprises, Inc.
New Sky, Ltd.
Northwest Aerospace Training Corporation
Northwest Airlines Charitable Foundation
Northwest Airlines Corporation
Northwest Airlines, Inc.
NW Red Baron LLC
NWA Fuel Services Corporation
NWA Real Estate Holding Company LLC
NWA Retail Sales Inc.
NWA Worldclub, Inc.
Tomisato Shoji Kabushiki Kaisha

The below are subsidiaries of Aerovías de México S.A. de C.V.

Administradora Especializada en Negocios, S.A. de C.V.
Aerolitoral, S.A. de C.V.
Aeromexpress, S.A. de C.V.
Aerosys, S.A. de C.V.
Aerovías Empresa De Cargo, S.A. de C.V.
AM DL MRO JV, S.A.P.I. de C.V.
Am Formación Interna, S.A. de C.V.
Centro de Capacitación Alas de América, S.A. de C.V.
Corporación Nadmin, S.A. de C.V.
Empresa de Mantenimiento Aéreo, S.A. de C.V.
Estrategias Especializadas de Negocios, S.A. de C.V.
Fundación Aeroméxico, A.C.

Inmobiliaria Avenida Fuerza Aérea Mexicana 416, S.A. de C.V.
Inmobiliaria Boulevard Aeropuerto 161, S.A. de C.V.
Inmobiliaria Grupo Aeroméxico, S.A. de C.V.
Operadora de Franquicias y Productos Aéreos, S.A. de C.V.
Sistemas Integrados de Soporte Terrestre En México, S.A. de C.V.

The below are affiliates of Aerovías de México S.A. de C.V.

Aeroméxico Cargo, S.A.P.I. de C.V.
AM BD GP JV, S.A.P.I. de C.V.
Concesionaria de Vuelos, S.A. de C.V.
Integración y Supervisión de Recursos Corporativos, S.A. de C.V.
Loyalty Servicios Profesionales Mundiales, S.A. de C.V.
Plm Premier, S.A.P.I. de C.V.
Servicios Corporativos Aeroméxico, S.A. de C.V.
T2 Servicios Aeroportuarios, S.A. de C.V.

No publicly traded company or corporation apart from those listed above has an interest in the outcome of the case. Petitioners will file an amended certificate of interested persons should they become aware of a change in interests that would affect the disclosures as required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-4.

Dated: November 7, 2025                Respectfully submitted,

                                       By: */s/ Matthew J. MacLean*

                                       Matthew J. MacLean
                                       Charles F. Donley II
                                       Edward W. Sauer
                                       Nicole Steinberg
                                       PILLSBURY WINTHROP SHAW PITTMAN LLP
                                       1200 Seventeenth Street, N.W.
                                       Washington, D.C. 20036
                                       (202) 663-8000
                                       matthew.maclean@pillsburylaw.com

                                       *Counsel for Aerovías de México, S.A. de
                                       C.V., dba Aeroméxico*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the undersigned counsel for Petitioner Aerovías de México S.A. de C.V. hereby certify that Petitioner Aerovías de México S.A. de C.V. is a wholly owned subsidiary of Grupo Aeroméxico, S.A.B. de C.V., a publicly held company. Counsel further certify that Delta Air Lines, Inc. and Apollo Global Management, Inc. are the only publicly held corporations that own more than 10% of Grupo Aeroméxico's capital stock.

Dated: November 7, 2025             Respectfully submitted,

                                    By: */s/ Matthew J. MacLean*

                                    Matthew J. MacLean
                                    Charles F. Donley II
                                    Edward W. Sauer
                                    Nicole Steinberg
                                    PILLSBURY WINTHROP SHAW PITTMAN LLP
                                    1200 Seventeenth Street, N.W.
                                    Washington, D.C. 20036
                                    (202) 663-8000
                                    matthew.maclean@pillsburylaw.com

                                    *Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*

- vi -

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................2

    I.   No Authority Permits the Department to Forgo Analyzing the
        Competitive Effects of the Joint Venture.......................................3

    II.  No Authority Permits the Department to Forgo Defining the
        Relevant Market ............................................................................6

    III. The Department Fails to Distinguish Similar Situations .............8

    IV. Aeroméxico is Entitled to Protection from Irreparable Harm .....9

    V.  Terminating Approval of the Joint Venture Results in Speculative
        Benefits, but Certain Harm to the Public ...................................10

CONCLUSION .................................................................................11

CERTIFICATE OF COMPLIANCE...................................................13

CERTIFICATE OF ELECTRONIC SUBMISSION.............................14

CERTIFICATE OF SERVICE ...........................................................15

# TABLE OF AUTHORITIES

Page(s)

<span style="text-align:center">Cases</span>

*ABC Aerolineas, S.A. de C.V. v. U.S. Dep't of Transp.*,
  747 F. App'x 865 (D.C. Cir. 2018)..................................................................4

*U.S. v. Am. Airlines Grp., Inc.*,
  121 F.4th 209 (1st Cir. 2024)........................................................................7

*U.S. v. Anthem, Inc.*,
  855 F.3d 345 (D.C. Cir. 2017).......................................................................7

*Bayou Lawn & Landscape Servs. v. Sec'y of Lab.*,
  713 F.3d 1080 (11th Cir. 2013) ...................................................................10

*Brown Shoe Co. v. U.S.*,
  370 U.S. 294 (1962)........................................................................................6

*Bus. Roundtable v. SEC*,
  647 F. 3d 1144 (D.C. Cir. 2011)................................................................3, 7

*Cal. Dental Ass'n v. FTC*,
  526 U.S. 756 (1999)........................................................................................5

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir. 2010) .....................................................................6

*Lindeen v. SEC*,
  825 F.3d 646 (D.C. Cir. 2016).......................................................................4

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*,
  715 F.3d 1268 (11th Cir. 2013) ...................................................................10

*Westar Energy, Inc. v. FERC*,
  473 F.3d 1239 (D.C. Cir. 2007)......................................................................9

<span style="text-align:center">Statutes and Codes</span>

United States Code
  Title 49, Section 41309.............................................................................2, 8
  Title 49, Section 41309(b)(1)........................................................................3

## INTRODUCTION

In its opposition to Aerovías de México, S.A. de C.V.'s ("Aeroméxico") Motion to Stay ("Opposition"), the Department of Transportation (the "Department") presents no evidence of public harm that would result from staying termination of the Department's approval of the joint venture agreement ("Joint Venture") between Aeroméxico and Delta Air Lines, Inc. ("Delta," together with Aeroméxico, "Petitioners"). Nor does it refute the evidence of irreparable harm that the public *and* Petitioners will suffer if the order terminating approval of the Joint Venture (Order 2025-9-8, the "Order") goes into effect before Petitioners have had their day in court.

The Department also does not refute Aeroméxico's claim that it failed to analyze the competitive effects of the Joint Venture, but rather argues it was "appropriate" not to. It does not push back on Aeroméxico's argument that it fails to define the relevant market and cherry picks beneficial market data. It claims that its wavering is "not a problem."

The Department points back to the Government of Mexico's actions at one airport, Benito Juarez International Airport ("MEX"), and argues that slot-constraints — common among major urban airports — and a prohibition of all-cargo operations permit the Department to assume that MEX is an anticompetitive

environment and that the Joint Venture unfairly benefits from it. This level of assumption is arbitrary and capricious.

The Court need not decide the merits now, only whether Petitioners have raised a legitimate challenge to the Order and whether preserving the *status quo* would prevent unnecessary, irreparable harm. Since the Department admits dismantling a near-decade long Joint Venture is "destabilizing," the Court can confidently grant Aeroméxico's Motion to Stay ("Motion").

## ARGUMENT

The Department fails to overcome Aeroméxico's showing that it has met the requirements for a stay. Rather than point to evidence supporting its position, the Department argues it was appropriate to skip analyzing the Joint Venture's competitive effects and to focus, instead, on the effects of the Government of Mexico's actions at MEX. The cases cited by the Department to justify that "there was no need for further Department examination of economic effect" relate to *non-immunized* cooperation.[1] Opp. at 12. They have nothing to do with the statutory

---

[1] While authorities considering non-immunized cooperation may supplement the Court's analysis, here, the Joint Venture has operated under antitrust immunity since it was approved by the Department in 2016. Mot. at 4. Accordingly, what is considered anticompetitive for non-immunized cooperation may not be anticompetitive in the context of immunized cooperation. Under 49 U.S.C. § 41309, the Department's analysis presumes the propriety of the Joint Venture until it shows that the agreement negatively impacts competition.

standard governing the Department's decision to terminate a joint venture with antitrust immunity.

Further, the Department attempts to downplay Aeroméxico's showing of irreparable harm but doesn't refute the showing. Nor does it point to any public harm that would result from maintaining the status quo while the Order is reviewed. Instead, the Department acknowledges that terminating approval of the Joint Venture will cause public disruption, which counsels *against* unwinding it before a decision by this Court. To avoid repeating that disruption if the Joint Venture must be reinstated, the Court should stay the Order pending a full review.

## I.    No Authority Permits the Department to Forgo Analyzing the Competitive Effects of the Joint Venture

The Department is authorized to disapprove a cooperative agreement between U.S. and foreign air carriers if that "*agreement* … substantially reduces or eliminates competition …." 49 U.S.C. § 41309(b)(1). Accordingly, the Department has a "statutory obligation to determine as best it can the economic implications of" the Order. *Bus. Roundtable v. SEC*, 647 F. 3d 1144, 1148 (D.C. Cir. 2011) (finding that the Securities and Exchange Commission ("SEC") "acted arbitrarily and capriciously for having failed" to "adequately to assess the economic effects of a new rule.") (citation omitted). The Department's failure to "apprise itself — and hence the public and the Congress — of the economic consequences of" the Order violates its statutory mandate and renders it arbitrary and capricious. *Id.*

The Department confirms it terminated the Joint Venture based on conduct of the *Government of Mexico*, not based on any competitive effect of the Joint Venture. By failing to conduct any analysis connecting the Joint Venture to allegedly anticompetitive effects, the Department has failed to "examine the relevant data" and to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *ABC Aerolineas, S.A. de C.V. v. U.S. Dep't of Transp.*, 747 F. App'x 865, 870 (D.C. Cir. 2018) (internal quotation omitted).

The Department attempts to excuse this by pointing to cases that require analysis "appropriate for the circumstances." Opp. at 12. Yet neither cited authority concludes that *no* economic analysis is necessary.

For example, the Department cites *Lindeen v. SEC* to argue it is not required to "conduct a rigorous, quantitative economic analysis unless the statute explicitly directs it to do so." 825 F.3d 646, 658 (D.C. Cir. 2016). But in *Lindeen*, the court credited the SEC's extensive analysis that considered the costs and benefits of the proposed regulation. Although the petitioners faulted the SEC for a lack of quantitative evidence, the SEC explained the absence of evidence, and the court noted that agencies are not required "to measure the immeasurable." *Id.*

Here, the Department neither considered any evidence of whether the Joint Venture "substantially reduces or eliminates competition," as Congress explicitly

directs it to, nor offered any explanation for an absence of evidence. There was no "appropriate" analysis.

Similarly, the Department cites *Cal. Dental Ass'n v. FTC* to argue that "the fullest market analysis," is not required, only "an enquiry meet for the case." 526 U.S. 756, 779-81 (1991). However, the Supreme Court found that the Federal Trade Commission's "abbreviated or 'quick look' analysis" was *insufficient* and that the Ninth Circuit's review of it "describe[d] no anticompetitive effects." *Id.* at 774-775. The Supreme Court held that "the plausibility of competing claims about the effects" of advertising restrictions rules out the abbreviated review entitled to an "obvious anticompetitive effect." *Id.* at 778.

Here, characterizing the Department's analysis of the competitive effects of the Joint Venture as a "quick look" is generous. The Department recites the Government of Mexico's actions at MEX and jumps to the conclusion that those actions create "anticompetitive conditions that give the JV unfair competitive advantages." Opp. at 18. Even if true, this conclusion would not establish that the *Joint Venture* substantially reduces or eliminates competition.

The Department cannot even establish that the Government of Mexico's actions reduce or eliminate competition. The Department cites the "large-scale confiscation of" slots at MEX as an "anticompetitive condition" the Joint Venture could exploit. Opp. at 1. But of the confiscated slots, almost *half* were *Aeroméxico's.*

- 5 -

Supp. SCO Objections at 23. How Aeroméxico could use the slot confiscation for competitive advantage is neither analyzed nor explained.

## II.    No Authority Permits the Department to Forgo Defining the Relevant Market

The Department also attempts to paint its "focus" on the U.S.-MEX market as "appropriate." Opp. at 14. It is not.

Defining the relevant market is the non-negotiable first step of a competitive analysis. *See e.g.*, *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962) ("[I]t is necessary to examine the effects of a merger in each such economically significant submarket to determine if there is a reasonable probability that the merger will substantially lessen competition."); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010) (analysis of competition requires "identify[ing] the relevant market in which the harm occurs.").

The Department has done nothing to consider or define the applicable market. MEX is a single airport in the larger U.S.-Mexico market that the Joint Venture operates in. MEX represents only 21% of the flights between the U.S. and Mexico, and the Department acknowledges its share of the U.S.-Mexico market is "gradually falling." Order at 19. MEX is not even the only international airport serving Mexico City, which is also served by Felipe Ángeles International Airport (NLU).

The Department oscillates opportunistically between describing conditions at MEX and conditions in the U.S.-Mexico market, depending on which has more

beneficial data. *See Bus. Roundtable,* 647 F. 3d at 1148-49 (agency "inconsistently and opportunistically framed the costs and benefits of the rule"). For example, the Opposition references the Joint Venture holding 60% of the U.S.-MEX market (Opp. at 2, 6, 10) but does not reference the Joint Venture's 20% share of the U.S.-Mexico market or compare it to American Airlines (which holds a 21% share) or United Airlines and Volaris (each holding 16%). Mot. at 14.

As the Department's two cited authorities demonstrate, the Department must (1) define the market and (2) demonstrate harm *caused by the collaboration* in such market. The Department has done neither.

In *U.S. v. Am. Airlines Grp., Inc.*, the First Circuit affirmed that the joint venture between American Airlines and JetBlue violated § 1 of the Sherman Act due to the joint venture's *demonstrated* anticompetitive effects at each of the *three* airports that it covered, including "decreased capacity, lower frequencies, or reduced consumer choice on multiple routes." 121 F.4th 209, 219 (1st Cir. 2024). Similarly, in *U.S. v. Anthem, Inc.*, the D.C. Circuit affirmed the injunction of a proposed merger of two health insurance companies after the Department of Justice defined the relevant markets and *demonstrated* the proposed mergers anticompetitive effects in those markets, including increased market concentration, higher prices, and reduced innovation. 855 F.3d 345, 364 (D.C. Cir. 2017).

- 7 -

Neither case supports the Department's claim that conditions in a single, undefined market, not caused by a joint venture, are alone sufficient to terminate a joint venture under 49 U.S.C. § 41309. Instead, the Department's vacillation between the U.S.-MEX and U.S.-Mexico markets concedes there are many distinct markets (*i.e.*, city-pairs) relevant to its required analysis that it failed consider. The Department's analysis begins and ends with the Government of Mexico's actions at MEX and fails to analyze the competitive effects of the Joint Venture on any other market it operates in. It is thus insufficient by any measure.

## III.    The Department Fails to Distinguish Similar Situations

The Department highlights the Government of Mexico's confiscation of slots and prohibition of all-cargo operations at MEX as justification for terminating approval of the Joint Venture. Opp. at 1. But the Department has upheld joint ventures with slot constraints and all-cargo restrictions in place.

For example, the slot regimes at Haneda (HND), Heathrow (LHR), and Lisbon (LIS) are at least as restrictive as the alleged restrictions at MEX. *See* Delta's Motion to Stay, ECF No. 17, at 11-14. All three airports handle over double the percentage of national air traffic with the U.S. in comparison to MEX's 22%: HND handles 55%, LHR handles 85%, and LIS handles 70%. *Id.* Despite this, and all-cargo restrictions in place at HND, the Department has not disrupted longstanding joint ventures serving these airports. *Id.* Accordingly the Department cannot argue

slot constraints are inherently anticompetitive. *See Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007) ("[A]dministrative procedure requires an agency to treat like cases alike.").

## IV. Aeroméxico is Entitled to Protection from Irreparable Harm

The Department scoffs at Aeroméxico's irreparable harms, arguing it should "have known" that the Department would terminate the Joint Venture. Opp. at 22-23. This is a smoke screen. The irreparable harm Aeroméxico will suffer if the Joint Venture is unwound comes not from formulating a dissolution plan, but from *implementing* such a plan. Regardless of time to prepare, unwinding the Joint Venture will unavoidably lead to substantial and non-speculative cost, disruption, and loss of goodwill. *See* Mot., Ex. A. And, if Aeroméxico prevails and the Joint Venture is reinstated, Aeroméxico will experience the same irreparable harm a second time to reconstitute the Joint Venture.

If the Department means to suggest that Aeroméxico should have had one foot in and one foot out of the Joint Venture, ready to "jump ship" on a moment's notice, that would undermine the Joint Venture's purpose and the public interests it serves.

Finally, the Joint Venture's five-year limitation and the Department's ability to disapprove it has no impact on the Department's responsibility to analyze the competitive impacts of the Joint Venture in a reasoned, non-arbitrary and capricious manner. Aeroméxico justifiably relied on the Department carrying out its statutory

mandate and, in the absence of such, should not be forced to face irreparable harm while the Court reviews the propriety of the Order.

In short, the Department cannot refute that Aeroméxico faces imminent, unrecoverable harms in the form of compliance and restructuring costs; losses of goodwill, customers, and corporate contracts; and structural harms from potential slot-season and network-planning losses. This Court has recognized each of these harms as irreparable harm justifying a stay of agency action. *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013) ("The threat of unrecoverable economic loss ... qualif[ies] as irreparable harm") (internal quotations omitted); *Bayou Lawn & Landscape Servs. v. Sec'y of Lab.*, 713 F.3d 1080, 1085 (11th Cir. 2013) ("[L]ost revenue, customers, and/or goodwill ... support a finding of irreparable injury.").

## V. Terminating Approval of the Joint Venture Results in Speculative Benefits, but Certain Harm to the Public

The Joint Venture has operated for nearly a decade with the Department's approval and provides broad public benefits, including expanded routes, lower fares, and seamless travel. The Department's speculation that allowing the Joint Venture to continue for a few more months would "compound" harm to the public (Opp. 26) is wholly unsupported. It is not in the public interest to terminate a longstanding Joint Venture, with all the concomitant disruption and harm that would entail, without an opportunity for full and fair consideration.

The Department has fallen victim to its own circular logic: Because the Department failed to analyze the competitive effects of the Joint Venture, it is unable to demonstrate any harm to the public, *caused by the Joint Venture,* that necessitates the Order going into effect while under this Court's review. The Department argues, "restoring fair competition immediately…is manifestly in the public interest," (Opp. at 27), but does not explain how terminating approval of the Joint Venture will accomplish this when it is, supposedly, the Government of Mexico's actions that are threatening fair competition.

Instead, the Department concedes that unwinding the Joint Venture will *cause* harm to the public, in the form of "disruptions for customers ahead of some holiday travel and end of year business" (Order at 32) and, because of this, extended the termination date from its initial proposal. This disruption will be amplified if the Joint Venture must be unwound and rebuilt again. The public should not be subject to such disruption until the Court reviews the propriety of the Department's action — exactly the circumstances a stay is meant for.

## CONCLUSION

The Court should stay the Order pending full review.

Dated: November 7, 2025        Respectfully submitted,

By: */s/ Matthew J. MacLean*

Matthew J. MacLean
Charles F. Donley II
Edward W. Sauer
Nicole Steinberg
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de
C.V., dba Aeroméxico*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1), I certify that the foregoing Reply complies with the type-volume limitations in Fed. R. App. P. 27(d)(2)(C). According to the word count feature of Microsoft Word, the motion contains 2,545 words, excluding the parts exempted under Fed. R. App. P. 32(f). This motion has been prepared in 14-point Times New Roman font.

Dated: November 7, 2025

Respectfully submitted,

By: */s/ Matthew J. MacLean*

Matthew J. MacLean
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*

- 13 -

**CERTIFICATE OF ELECTRONIC SUBMISSION**

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: November 7, 2025          Respectfully submitted,

By: */s/ Matthew J. MacLean*

Matthew J. MacLean
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*

- 14 -

**CERTIFICATE OF SERVICE**

I certify that on November 7, 2025, the foregoing Reply in Support of Aeroméxico's Motion to Stay was electronically filed with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will send a notice of filing to all registered users.

Respectfully submitted,

By: */s/ Matthew J. MacLean*

Matthew J. MacLean
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 663-8000
matthew.maclean@pillsburylaw.com

*Counsel for Aerovías de México, S.A. de C.V., dba Aeroméxico*

- 15 -